## STATE v. UNITED PARKING STATIONS, INC.[1]

November 16, 1951.

No. 35,542.

[1]Reported in 50 N. W. (2d) 50.

*William W. Fink,* for appellant.

*John F. Bonner,* City Attorney, and *Joseph A. Hadley,* Assistant City Attorney, for the State.

CHRISTIANSON, JUSTICE.

Appeal from a judgment of conviction for violation of a municipal ordinance regulating open air motor vehicle parking lots in the city of Minneapolis.

Defendant corporation is the duly licensed proprietor of a parking lot at 18-20 North Sixth street in Minneapolis. It is charged with the violation of Minneapolis City Charter and Ordinances 1949 (Perm. ed.) c. 33:59, § 4, which provides in part as follows:

"Every licensee under the terms of this ordinance shall maintain suitable signs on the premises used by him as a parking lot. Said signs shall show the name and telephone number of the licensee or attendant, the licensee's number under which he is operating and the rates charged for parking or storing automobiles. Signs shall be posted at each entrance and exit, plainly visible to the public, and shall be printed in English in letters at least three inches high."

Defendant's parking lot has two entrances. The main entrance is on North Sixth street, and the other is on an alley at the rear of the lot. On the day of the alleged violation, signs on which only the word "Parking" appeared were posted at both entrances.

A small shanty was located on the lot about 140 feet from the North Sixth street entrance and about 30 feet from the alley entrance. The attendant who met patrons of the lot was stationed in it. On the side of the shanty was a sign showing the license number of the licensee and the hourly rates charged. The exact size of the figures on this sign is in dispute. However, they were not visible from either entrance to the parking lot. The evidence also

discloses that there was a sign on the door of the shanty which was apparently intended to inform patrons where they might pick up their automobile keys if the attendant were gone. Defendant points to these signs as evidence of its substantial compliance with the ordinance.

Defendant challenges the constitutionality of the quoted provisions of the ordinance, on the ground that they are an unreasonable exercise of the police power. It also asserts that to enforce said provisions in this case would be arbitrary and capricious.

■ Since State v. Morrow, 175 Minn. 386, 221 N. W. 423, it has been settled that the general welfare clause of the Minneapolis city charter (c. 4, § 5) gives the council the power to license and make regulations governing open air motor vehicle parking lots. But the source of the power to regulate open air parking lots is not in issue here. Rather, we are asked to decide whether § 4 (now 33:59-4) [2] of this ordinance, insofar as it requires the posting of signs showing the rates charged for parking at the entrances and exits of such lots, is an unreasonable exercise of that power so as to violate the due process clauses of U. S. Const. Amend. XIV, and Minn. Const. art. 1, § 7.

Though § 4 requires that the signs show several items of information, defendant attacks as an unreasonable exercise of the police power only the requirement that the rates charged be posted on such signs. The police power has been said to embrace "regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety." C. B. & Q. Ry. Co. v. People ex rel. Drainage Commrs. 200 U. S. 561, 592, 26 S. Ct. 341, 349, 50 L. ed. 596, 609.

The guides for determining whether a municipality has exceeded the reasonable bounds of the police power so as to violate the due process clauses of the state and federal constitutions have been

---

[2] Added to the original ordinance by amendment after the decision in the Morrow case.

marked out in prior decisions of this court.[3] In State v. Houston, 210 Minn. 379, 383, 298 N. W. 358, 360, which was concerned with a Minneapolis ordinance establishing grades for retail trade in eggs, this court stated:

"A court will exercise judicial scrutiny over the details of an ordinance. * * * But the power of the court to declare an ordinance invalid because it is unreasonable must be exercised carefully."

Here we are faced with an ordinance which regulates open air parking lots. The subject matter of the regulation is a commonly recognized source of concern to the public. The effectiveness of off-street parking facilities is known to have a direct bearing on the economic development of a municipality, as well as the safety with which drivers may travel its streets. Recently courts of other states have held valid the use of eminent domain proceedings to acquire property for municipal parking lots. Bowman v. City of Kansas City, 361 Mo. 14, 233 S. W. (2d) 26; Poole v. City of Kankakee, 406 Ill. 521, 94 N. E. (2d) 416. Both the nature of these decisions and the discussions contained in them emphasize the increasing recognition other courts have given to the parking problem.

We are not faced with nearly so far-reaching an activity as eminent domain proceedings. The ordinance provisions we must scrutinize require the posting of parking rates on signs at every entrance and exit of a parking lot. Though the purpose of these provisions is not stated in the ordinance, they were apparently designed to inform a motorist *before* entering a parking lot of the rates charged therein, so that he may go elsewhere if the rates seem too high. The motorist who is required to enter a lot to find out the rate must, if dissatisfied, either leave the lot at the expense of personal inconvenience and congestion of the public streets or stay and pay a rate he would not have paid had it been made known to him

[3]See, State v. The Crabtree Co. 218 Minn. 36, 15 N. W. (2d) 98; State v. Houston, 210 Minn. 379, 298 N. W. 358; State ex rel. Remick v. Clousing, 205 Minn. 296, 285 N. W. 711, 123 A. L. R. 465; Sverkerson v. City of Minneapolis, 204 Minn. 388, 283 N. W. 555, 120 A. L. R. 944; City of St. Paul v. Clark, 194 Minn. 183, 259 N. W. 824.

earlier. The provisions of the ordinance may also, as respondent suggests, be directed at the prevention of fraud and misrepresentation, which is clearly permissible within the police power. 7 McQuillin, Municipal Corporations (3 ed.) § 24.396. Against these considerations are weighed the expense and inconvenience which parking lot operators must incur in erecting signs at every entrance and exit, regardless of their location or amount of use.[4]

There are undoubtedly other considerations which may be cited by each side to support its position. However, we need not evaluate the merits of the arguments presented by each side, for courts have no power to declare an ordinance void as being unreasonable unless the unreasonableness is so clear, manifest, and undoubted as to amount to a mere arbitrary exercise of legislative power. State v. Houston, 210 Minn. 379, 298 N. W. 358, *supra*. Where, as here, the legislative action is within the scope of the police power and the enactment presents fairly debatable questions as to its reasonableness, wisdom, and propriety, the determination of such questions is not for the courts, but rather for the determination of the legislative body upon which rests the duty and responsibility of such decisions. State v. The Crabtree Co. 218 Minn. 36, 41, 15 N. W. (2d) 98, 100, citing Standard Oil Co. v. City of Marysville, 279 U. S. 582, 584, 49 S. Ct. 430, 73 L. ed. 856, 859.

■ Though an ordinance may not be unreasonable, we still retain the power to prevent its arbitrary or capricious enforcement. See, State v. Morrow, 175 Minn. 386, 221 N. W. 423, *supra*. Defendant maintains that this is a proper case for the exercise of that power.

Here, there were admittedly no rates posted at either of the two entrances to the lot. There is testimony to the effect that all patrons entering the lot were directed to the shanty upon which the sign with rates was posted, and there were met by an attendant who asked the length of the stay intended and informed them of the rates charged. The shanty is about 140 feet from the main entrance and

─────────

[4]The ordinance is not applicable to parking lots where less than five motor vehicles may be parked, and § 4 thereof is not applicable where cars are parked or stored on a monthly or weekly fee basis.

about 30 feet from the rear entrance. Thus, a patron using the main entrance would not be informed of the rates charged at this lot until *after* he had driven into the lot a considerable distance. In light of the apparent purposes of § 4, a finding of substantial compliance with the ordinance is not warranted in this case. There were other deviations from the requirements of § 4, but from the foregoing facts alone it clearly appears that the enforcement of the ordinance was neither arbitrary nor capricious and that the judgment of conviction should be affirmed.

Affirmed.