## STATE v. L. P. FINLEY.[1]

May 28, 1954.

No. 36,290.

---

[1]Reported in 64 N. W. (2d) 769.

*Nichols, Mullin, Farnand & Lee* and *George C. Mastor,* for appellant.

*John F. Bonner,* City Attorney, and *Leo P. McHale,* Assistant City Attorney, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the municipal court denying defendant's motion for a new trial.

The facts are undisputed. Defendant is a refrigeration installer who holds a certificate of competency as a master refrigeration installer issued by the city of Minneapolis pursuant to the refrigeration systems ordinance. Minneapolis City Charter and Ordinances (Perm. ed.) 3:17-1 reads:

"No person, firm or corporation shall hereafter construct, install, alter, repair or service any refrigeration system or equipment in any building or structure within the City of Minneapolis, or engage in or carry on the business in said City, of constructing, installing, altering, repairing or servicing refrigeration systems or equipment, without having first secured a license from the City Council of said City authorizing him or them so to do, and paying the fee, and giving the bond hereinafter provided for."

Under 3:17-7, for the purposes of the ordinances, the following definitions govern as to the meaning of the pertinent terms and expressions defined:

"A refrigeration system shall be taken to mean a combination of parts in which a refrigerant is circulated for the purpose of extracting heat."

"A Master Refrigeration Installer shall be taken to mean a person, firm or corporation duly licensed by the City Council, as herein provided, to engage in or carry on, in the City of Minneapolis, the

business of constructing, installing, altering, repairing and servicing refrigeration systems and equipment."

Defendant was charged with violating the Minneapolis water works and sewer ordinance (41:1-6.21) in that it is claimed that he extended and added certain piping connected with the water system of the city of Minneapolis without "having first obtained from the City Council of the city of Minneapolis, a Master Plumber license so to do." The violation charged arose out of the installation of certain refrigeration systems in a store in Minneapolis.

It appears undisputed from the evidence that, as a part of the refrigeration systems, defendant installed certain copper pipes leading from the condensers in the air-cooling system, a distance of some 60 or 75 feet, and connected them with the Minneapolis water system by fitting the pipes to two openings consisting of either T valves or open-end screw valves which apparently had been left there for that purpose by the plumbers. The evidence does not disclose the manner in which the connections were made to the valves. At no time did defendant cut into the city water pipes in making the connections. The purpose of the installation of the copper pipes and connecting them to the valves was to run water to the air-cooling units.

It is defendant's claim that, as the holder of a certificate of competency as a master refrigeration installer, he had the right to connect the copper tubing by utilizing the openings which were left for that purpose; that it constituted a part of the installation of refrigeration systems which he was authorized to make under the refrigeration systems ordinance. He concedes that he was not a master plumber nor the holder of a master plumber's license and that no permit was taken out by him from the water works department of the city of Minneapolis to extend and add to the city water system. It is his position that, even so, the evidence does not justify a finding that he was guilty of extending or adding to the Minneapolis water system, inasmuch as he did only the things which he was authorized to do as a master refrigeration installer.

The water works ordinance (41:1-6.21) which defendant is claimed to have violated, reads in part as follows:

"No person shall make any extension or addition to or alteration of any pipe, fixture or plumbing connected with the water system of the City of Minneapolis without such person being a duly licensed master plumber, nor without first having obtained from the Superintendent or Supervisor of the Water Works, a written permit so to do for each building or place where such work is to be performed. * * * Any person violating this rule shall be punished by a fine of not less than five dollars nor more than $50, or by imprisonment for not less than ten days nor more than 30 days."

The case was tried before the Minneapolis municipal court without a jury. After the trial but before a decision was made in the matter, defendant was served with three orders directing him to show cause why Plumbers Local Union No. 15, Minneapolis Retail Plumbers Association, and Heating, Piping and Air Conditioning Contractors Minneapolis Association should not be granted leave to file briefs *amici curiae* on the matters of law involved. Both the prosecution and defendant appeared at the hearing on these three orders and objected to the granting of the motions and appearance of the movents as *amici curiae* or otherwise. Notwithstanding these mutual objections, the trial court granted the movents leave to file briefs *amici curiae* on the questions of law involved. Later, briefs were filed and were considered by the trial court in its decision finding defendant guilty as charged.

The principal legal questions raised by defendant upon appeal are:

(1) Did defendant, as the holder of a certificate of competency as a master refrigeration installer under 3:17, have the right by reason of such certificate to connect the refrigeration systems which he was installing with the Minneapolis water system by utilizing the openings left in the water distributing pipes, water being the integral part of the refrigeration system and necessary for its operation?

(2) Did the municipal court have the power to permit groups

which, according to defendant, were hostile to the cause to file *amici curiae* briefs over objections of both the prosecution and defendant in a criminal or quasi-criminal proceeding, and did the trial court abuse its discretion by permitting the filing of such briefs under such circumstances by organizations representing interests adverse to defendant in a criminal or quasi-criminal proceeding?

The trial court in its memorandum considered that the sole issue was whether, under the circumstances here, it was proper for defendant, a master refrigeration installer, to connect the copper pipes by way of the valves to the city water system. The court held that he could not do so in the absence of a master plumber's license and a permit from the superintendent of water works. It was of the opinion that the act of connecting the copper pipes leading from the condensers of the refrigeration unit to the city water pipes by way of the valves constituted an extension of or an addition to the city water pipe in violation of the ordinance. Defendant was found guilty as charged and was fined $50.

While the structural question as to just what constitutes an extension of or an addition to a city water system may be a technical and close one as between refrigeration installers and plumbers, we as a court must review and consider the record from a reasonable and practical standpoint when it involves a quasi-criminal procedure in connection with the alleged violation of an ordinance. In this respect we quote from Opinion Attorney General, No. 338-A, May 17, 1949, involving the installation of water softeners:

"It is manifest that different situations may require different kinds of work. In installing the water softener in one house it may be necessary to cut water pipes, cut lengths of pipe and thread the same. In another situation it may be that all that is necessary is to screw a pipe already threaded into a union or other connection. If all that was required is to screw one pipe already threaded into another, I do not think such work would constitute plumbing but if it is necessary to measure and cut pipes and to thread the same and do other work, I would consider that the employee was engaged in plumbing within the meaning of your ordinance."

We recognize the principle that the regulation of an occupation in the interest of public health, safety, and welfare is valid as a proper exercise of the police power of the state. The rule is, however, that such restraint must be reasonable and must bear such a relationship to the public welfare as will sustain it as a police measure. State v. Harrington, 229 Iowa 1092, 296 N. W. 221; Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, 78 L. ed. 940, 89 A. L. R. 1469; Scully v. Hallihan, 365 Ill. 185, 6 N. E. (2d) 176. We can well understand in this modern age of industrial expansion and construction development that some regulation of such an important industry as the plumbing business would be necessary not only in the interest of public health but in the interest of competent and efficient construction. It is a skilled trade requiring the services of men carefully trained in the business. If every unskilled person without proper training were allowed to promiscuously cut into, tap, or alter pipes in a municipal water system, without regulation or inspection, the results could be disastrous not only from a public health but also from an economic standpoint. It is our opinion, however, after careful consideration of the record before us, that there was no such violation of the ordinance involved as to warrant a conviction of defendant under the circumstances here.

Defendant was not an unskilled or untrained workman but rather a master refrigeration installer with a certificate of competency issued to him by the city of Minneapolis pursuant to the refrigeration systems ordinance of that municipality. As a master refrigeration installer, he was duly licensed by the city council to engage in or carry on the business of constructing, installing, altering, repairing, and servicing refrigeration systems and equipment in the city of Minneapolis. In pursuance of his trade, he installed refrigeration systems. In this connection a refrigerant is circulated through the system for the purpose of extracting heat from the area outside the cooling coils. Water is an integral part of the refrigeration system and is necessary for its operation. In order to obtain the necessary water from the water system, defendant connected the copper pipes to the valves left for that purpose. He did not cut into any water-

distributing pipe forming a part of the city water system. Neither can we perceive that what he did could be interpreted as detrimental to the public health or welfare. To say that under those circumstances he made such extensions or additions as to bring him in violation of the ordinance in question appears to us to be too narrow or limited a construction of the ordinance. It verges on saying that a property owner connecting a sprinkling hose to a faucet left on his house for that purpose would be extending or adding to the municipal water system—an interpretation which the plumbing industry itself would not sanction.

■ Defendant objects to the trial court's allowing certain groups to file *amici curiae* briefs. It is his position that the three so-called hostile groups which filed these briefs were acting in the nature of special prosecutors. He contends that the court acted beyond its power in accepting the briefs in a criminal or quasi-criminal proceeding since the municipal court vests in the city attorney only the prosecution of criminal proceedings.

Although municipal ordinances are not criminal statutes and violations thereof technically are not crimes, prosecutions thereunder are in the name of the state and are quasi-criminal in form. State v. Robitshek, 60 Minn. 123, 61 N. W. 1023, 33 L. R. A. 33; State v. End, 232 Minn. 266, 45 N. W. (2d) 378; City of St. Paul v. Keeley, 194 Minn. 386, 260 N. W. 357; Village of Crosby v. Stemich, 160 Minn. 261, 199 N. W. 918. Regardless of the classification as criminal and quasi-criminal, it appears to us that the prosecution of defendant was in the nature of a criminal proceeding conducted pursuant to Minneapolis municipal court act (M. S. A. c. 488, Appendix 1, §§ 2, 17, 21).

An *"amicus curiae"* is one who gives information to the court on some matter of law in respect to which the court is doubtful. Kemp v. Rubin, 187 Misc. 707, 64 N. Y. S. (2d) 510. The ordinary purpose of an *amicus curiae* brief in civil actions is to inform the court as to facts or situations which may have escaped consideration or to remind the court of legal matters which have escaped its notice and regarding which it appears to be in danger of making

a wrong interpretation. State ex rel. Bennett v. Bonner, 123 Mont. 414, 214 P. (2d) 747. To the same effect, see The Claveresk (2 Cir.) 264 F. 276; 2 Am. Jur., Amicus Curiae, § 2.

An examination of the *amici curiae* briefs involved satisfies us that they should not have been received by the court under the circumstances here. It is apparent from the record that the court considered these briefs in connection with others in arriving at its decision. While *amici curiae* briefs might well have been accepted by the court from the organizations referred to if this were a civil action, it is our opinion that because of the quasi-criminal nature of this action they should not have been received. It appears to us that some parts of the *amici curiae* briefs indicate that they went beyond the scope of advising the court on doubtful matters of law or reminding it of legal matters which might have escaped the court's notice. Rather, they partially tend to impress upon the court the guilt of defendant. For example, one of the briefs closes with the statement "My conclusion is that defendant is guilty beyond any reasonable doubt as charged in the Complaint." Another states:

"The transcript in question of the evidence in case No. 96155 proves conclusively that the defendant L. P. Finley, was guilty of violation of this ordinance."

It is our opinion that the *amici curiae* briefs should not have been accepted or considered by the court under the circumstances here.

Reversed.