CITY OF ST. PAUL v. RUSSELL C. DALSIN.[1]

July 22, 1955.

No. 36,593.

[1]Reported in 71 N. W. (2d) 855.

*Harry G. Costello, Jr., B. Warren Hart,* and *Faricy, Moore & Costello,* for appellant.

*Marshall F. Hurley,* Corporation Counsel, and *James F. Sullivan,* Assistant Corporation Counsel, for respondent.

*Lewis L. Anderson* for *amicus curiae,* Roofing & Sheet Metal Contractors Association, Inc.

MATSON, JUSTICE.

Defendant appeals from a municipal court judgment convicting him of conducting his business as a roofer without having a license for performing warm air heating, ventilation, and general sheet metal work as required by an ordinance of the city of St. Paul.

Defendant is a partner of the firm of John A. Dalsin & Son whose place of business is located in Minneapolis. On August 5, 1954, in the course of placing a roof on the Minnesota Veterans Service Building, a sheet metal worker, employed by the Dalsin firm, was installing copper flashings on such roof. The use of copper flashings is an integral part of the roofing process.

On the complaint of a building inspector for the city of St. Paul, defendant was arrested, tried, and convicted of violating Building Code of City of St. Paul, § 111,[2] which requires a license for per-

---

[2]Building Code of City of St. Paul, § 111-1, provides:

"Any person, firm or corporation desiring to engage in the business of the construction, alteration, repair, installation, servicing, moving or wrecking

forming "Warm air heating, ventilation and general sheet metal work installing and repair." Neither the defendant nor any member of his firm had any such license. There is no claim and no evidence in the record which indicates that defendant is engaged in the business of warm air heating or that of ventilation. The building inspector was of the opinion, and the trial court must necessarily have so found, that the installation of copper flashings constituted sheet metal work. Under the ordinance in question, and it was so admitted upon argument, there are no separate licenses for warm air heating, ventilation, and general sheet metal work. A single license is issued for all three categories.

In order for a firm to receive a license, at least one of the partners, according to the ordinance, must hold a certificate of competency as a master tradesman[3] which can be obtained by taking an examination.[4] There is no provision for a separate examination for general sheet metal work only, and the examination for the certificate of competency, which is relevant in this case, therefore includes questions covering warm air heating, ventilation, *and* general sheet metal work. According to the record, there is no requirement that *a roofing contractor as such* have a license to operate in St. Paul.

Defendant's firm, however, could not qualify for a license to operate in St. Paul by merely having one of its members obtain a certificate of competency as a master tradesman, since another provision of the building code ordinance, applicable to a nonresident from Minneapolis, required in addition that such firm establish and maintain a place of business in St. Paul. Pursuant to such section (§ 111-3), a nonresident of St. Paul must maintain a place of business in St. Paul in order to qualify for a St. Paul license *if the*

of any building, structure or part thereof, *as listed below,* shall first obtain a license from the Bureau authorizing him or them to engage in such business. * * *

\* \* \* \* \*

"1. Warm air heating, ventilation *and* general sheet metal work installing and repair." (Italics supplied.)

[3]Building Code of City of St. Paul, § 111-2b.

[4]Building Code of City of St. Paul, §§ 110-1h and 110-2c.

*municipality from whence he comes has a similar requirement with respect to a nonresident.* Thus, for defendant to receive a license from St. Paul, he must maintain a place of business in St. Paul since Minneapolis, from whence he comes, would require a St. Paul resident to maintain a place of business in Minneapolis in order to obtain a Minneapolis license. It is to be noted, however, that a nonresident from a city which has no requirement as to place of business would receive a license from St. Paul without maintaining a place of business in St. Paul if he were otherwise qualified.[5]

Defendant was adjudged guilty of violating the ordinance and was sentenced to serve ten days or pay a fine of $100. This appeal is from the judgment of conviction.

There are two reasons why the judgment of conviction cannot be sustained: First, because the licensing requirements as applied to the installation of copper flashings as an incident of the roofing trade is unreasonable and oppressive; and, secondly, because the section of the ordinance which requires a defendant to establish a place of business in St. Paul is based upon a classification which

[5]Building Code of City of St. Paul, § 111-3:

"No license shall be granted to any person, partnership, firm or corporation to engage in any of the businesses listed in Section 111-1 unless person, partnership, firm or corporation shall have and maintain a bona fide address or location where all types of business may be transacted. * * *

"If any municipality * * * has licenses or license requirements substantially the same as any license that may be required by this Code and has restrictions or regulations relative to residence requirements of the individual, person, partnership, firm or corporation or requirements *as to place of business* or number of employees or type of business to be carried on therein, *the applicant may not obtain a license under this ordinance unless they shall comply with those regulations to the same force and effect as in their own locality.* These requirements relative to residence or place of business shall be applied under this Code with the same force and effect as they are applied in their own locality. Where an applicant is from a location wherein no residence requirements or place of business requirements exist or where no license requirements are in effect, a license shall be granted to them in Saint Paul providing that they meet all other requirements of this Ordinance." (Italics supplied.)

discriminates between persons similarly situated in violation of the equal protection clause of U. S. Const. Amend. XIV.[6]

■ Generally speaking, pursuant to its police power a municipality may regulate by license any business or trade which may injuriously affect the public health, morals, safety, convenience, or general welfare.[7] Since a municipal ordinance is presumed constitutional,[8] the burden of proving that it is unreasonable or that the requisite public interest is not involved, and consequently that the ordinance does not come within the police power of the city, rests on the party attacking its validity.[9] Judicial concepts of what is a sufficient public interest to invoke the police power, and of whether a certain remedy is reasonably appropriate to accomplish its purpose without going beyond the reasonable demands of the occasion so as to be arbitrary, are not static but are geared to society's changing conditions and views. In short, the police power keeps pace with social and economic developments of the day so as to justify regulatory restrictions which might well have been thought intolerable and unconstitutional when social relations were less complex.[10] We are here concerned with the regulation of the legitimate business or occupation of a roofer which incidently involves the application of sheet metal flashings. Assuming for the purposes of this opinion that such occupation is affected with the required public interest, we turn directly to the building code ordinance, under which the de-

[6]For excellent discussions of occupational licensing legislation, see Clark, *Occupational Licensing in the Building Industry*, 1952 Wash. U. L. Q. 483; Occupational Licensing Legislation in the States, 1952, The Council of State Governments.

[7]3 Dunnell, Dig. (3 ed.) § 1608; 13 Dunnell, Dig. (3 ed.) § 6794; see, State v. United Parking Stations, Inc. 235 Minn. 147, 50 N. W. (2d) 50, 29 A. L. R. (2d) 852.

[8]State v. Taubert, 126 Minn. 371, 148 N. W. 281; 13 Dunnell, Dig. (3 ed.) § 6752. As to question of reasonableness, see Village of Minneota v. Martin, 124 Minn. 498, 145 N. W. 383, 51 L.R.A.(N.S.) 40; State v. United Parking Stations, Inc. 235 Minn. 147, 50 N. W. (2d) 50, 29 A. L. R. (2d) 852; 13 Dunnell, Dig. (3 ed.) § 6755.

[9]City of St. Paul v. Clark, 194 Minn. 183, 259 N. W. 824.

[10]See, 3 Dunnell, Dig. (3 ed.) § 1603.

fendant was convicted, to determine whether the remedy therein prescribed is *reasonable and appropriate for accomplishing its purpose.*

Although a municipality may by license regulate an occupation which is affected with the public interest, the licensing requirements must be reasonable in their terms and conditions so as not to go beyond the demands of the occasion whereby unnecessary, unreasonable, or oppressive restrictions are imposed in contravention of the state and federal constitutions.[11] In the instant case no license could be obtained by the defendant unless he demonstrated that he was qualified in the entire field of "Warm air heating, ventilation *and* general sheet metal work installing *and* repair." (Italics supplied.) It should be noted that in the ordinance the word *and* is used as the connective; whereas, in a prior enumeration of other businesses covered by the licensing provision, the word *or* is used.[12] It follows, and it is so admitted, that the examination for the relevant certificate of competency, which is a prerequisite to the issuance of a license, includes questions relating to all three fields, *i.e.,* warm air heating, ventilation, and general sheet metal work. There is no separate license available for general sheet metal work alone. In other words, the defendant was effectively barred from doing roofing work in St. Paul unless he, or some other member of his firm, qualified himself in the three fields of warm air heating, ventilation, and general sheet metal work. The requirement that a roofer must qualify himself in warm air heating and ventilation has no reasonable relation to any justifiable regulation of the roofing trade. Since the ordinance embraces unnecessary, unreasonable, and oppressive requirements as a prerequisite to a license to install sheet metal flashings as an incidental part of the process of laying a roof, it must be held unconstitutional *insofar* as applies to the roofing trade.[13] A legislative act may be unconstitutional and void in its

[11]See, Lee v. Delmont, 228 Minn. 101, 36 N. W. (2d) 530; 11 Am. Jur., Constitutional Law, §§ 302 to 304; 33 Am. Jur., Licenses, § 17; 53 C. J. S., Licenses, § 16.

[12]Building Code of City of St. Paul, § 111-1.

[13]Cf. State v. Finley, 242 Minn. 288, 64 N. W. (2d) 769; State v. De Guile, 160 Minn. 191, 199 N. W. 569.

application to some persons or separable subject matters and constitutional as to others.[14] A regulation valid for one sort of business may be invalid for another business, or for the same business under other circumstances, since the reasonableness of a regulation depends upon the relevant facts.[15]

The provision of the ordinance which requires defendant, as a nonresident from Minneapolis, to establish a place of business in St. Paul as a prerequisite to obtaining a license (§ 111-3) is invalid since it is based upon a classification which has no reasonable basis and which discriminates between persons (nonresidents) similarly situated in violation of the equal protection clause of U. S. Const. Amend. XIV. It is elementary that a classification to be valid must embrace and uniformly affect all who are similarly situated, and the distinctions which separate those who are included from those who are excluded must, upon some reasonable view of the facts, be genuine and substantial so as to provide a reasonable— as distinguished from a merely capricious and arbitrary—basis for the imposition of special legislative regulations.[16] In the instant case there is discrimination among those who are similarly situated. All nonresident applicants for a license to engage in warm air heating; ventilation, and general sheet metal work are not treated alike under the ordinance. Those nonresidents coming from cities which have license requirements compelling a St. Paul resident to maintain a place of business in that city are forced to maintain a place of business in St. Paul in order to obtain a St. Paul license. On the other hand, a similar nonresident coming from a city which does not require nonresidents to maintain a place of business therein to qualify for a license would not have to maintain a place of business

---

[14]Thurman v. Chicago, M. & St. P. Ry. 254 Mass, 569, 151 N. E. 63, 46 A. L. R. 563; Jaehne v. New York, 128 U. S. 189, 9 S. Ct. 70, 32 L. ed. 398; Brady v. Mattern, 125 Iowa 158, 100 N. W. 358, 106 A. S. R. 291; 11 Am. Jur., Constitutional Law, § 163.

[15]Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, 78 L. ed. 940, 89 A. L. R. 1469; 11 Am. Jur., Constitutional Law, § 286.

[16]State v. Pehrson, 205 Minn. 573, 287 N. W. 313, 123 A. L. R. 1045; Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. (2d) 598.

in St. Paul in order to obtain a St. Paul license. Clearly, the statute does not operate uniformly on all nonresident applicants for the same license.[17] Thus, when a municipal ordinance imposes restrictions upon one class of persons engaged in a particular business which are not imposed upon others engaged in the same business and under similar circumstances, there is a violation of the equal protection clause, thereby rendering the ordinance unconstitutional.[18]

The fact that some St. Paul nonresidents live in communities which have requirements compelling nonresidents to maintain therein a place of business provides no reasonable basis for segregating and distinguishing them from other St. Paul nonresidents who happen to come from communities which have no such requirements. This distinction between the two groups of nonresidents has no relation to any legitimate regulatory purpose. It is evident that the requirement of the ordinance herein for maintaining a place of business in St. Paul is merely retaliatory against residents of cities which likewise discriminate against St. Paul residents.[19] Discrimination cannot be cured by retaliation. The prevention of retaliatory discrimination between rival political subdivisions was one of the chief objectives which was sought to be accomplished by the adoption of the federal constitution. Travis v. Yale & Towne Mfg. Co. 252 U. S. 60, 40 S. Ct. 228, 64 L. ed. 460.

The fact that discriminatory legislation on the part of one political subdivision furnishes no reasonable basis for retaliatory legislation by another political unit is illustrated by the United States Supreme Court decisions which have arisen under U. S. Const.

[17]See Chicago v. Wonder Heating Systems, 345 Ill. 496, 178 N. E. 192, for an instance where an ordinance operates uniformly on everyone similarly situated within the city of Chicago.

[18]Soon Hing v. Crowley, 113 U. S. 703, 5 S. Ct. 730, 28 L. ed. 1145; City of Newnan v. Atlanta Laundries Inc. 174 Ga. 99, 162 S. E. 497, 87 A. L. R. 507; Harrigan & Reid Co. v. Burton, 224 Mich. 564, 195 N. W. 60, 33 A. L. R. 142.

[19]Compare the place-of-business requirements in State v. Pehrson, 205 Minn. 573, 287 N. W. 313, 123 A. L. R. 1045.

Amend. XXI.[20] These decisions hold that that amendment conferred upon each state the right to prohibit or to regulate the importation of intoxicating liquor and that in the exercise of that right a retaliatory classification in legislation directed against another state is not to be deemed forbidden by the Fourteenth. The clear implication of these decisions is that, as to matters not covered by the Twenty-first Amendment, the equal protection clause of the Fourteenth Amendment operates to invalidate retaliatory classifications.

The judgment of the trial court is reversed.

Reversed.

---

[20]See, State Board v. Young's Market Co. 299 U. S. 59, 57 S. Ct. 77, 81 L. ed. 38; Mahoney v. Triner Corp. 304 U. S. 401, 58 S. Ct. 952, 82 L. ed. 1424; Indianapolis Brewing Co. v. Liquor Control Comm. 305 U. S. 391, 59 S. Ct. 254, 83 L. ed. 243.