## CONSTRUCTION AND GENERAL LABORERS UNION, LOCAL 563 AFL-CIO, AND OTHERS v. CITY OF ST. PAUL AND OTHERS.

134 N. W. (2d) 26.

March 19, 1965—No. 39,357.

*Stephen Maxwell,* Corporation Counsel, and *Robert E. Faricy* and *Jon R. Duckstad,* Assistant Corporation Counsel, for appellants.

*Samuel I. Sigal* and *Sigal, Savelkoul, Cohen & Sween,* for respondents.

NELSON, JUSTICE.

Plaintiffs brought an action under the Uniform Declaratory Judgments Act, Minn. St. c. 555, against the city of St. Paul and others seeking a judgment declaring St. Paul Legislative Code, chapter 104, unconstitutional and void. Summary judgment was entered against defendants, and several of them appeal, seeking to have it vacated and the validity of the ordinance sustained.

The ordinance involved compels all contractors who are performing work for the city of St. Paul to employ only Ramsey County residents, which includes St. Paul residents. A "resident" is defined in said ordinance as "a person who has resided in the County of Ramsey for at least six months prior to the date of employment." It is further required that such employee must obtain from the city clerk a resident identification card which certifies that he is a resident of Ramsey County. The sanction imposed against a contractor who violates the requirement is the loss of his contract.

The action is brought by two individual union members—LeRoy Larson and John L. Miller—together with the Construction and General Laborers Union, Local 563, AFL-CIO. Larson lives in Anoka County and Miller lives in Pine County. Defendants, in addition to the city, are the Board of Education of the city of St. Paul; Frank L. Loss, Commissioner of Parks, Recreation, and Public Buildings; Alfred H. Schroeder, City Architect; and McGough Construction Company, Inc., a private corporation engaged in the building construction industry.

The McGough Construction Company, Inc., entered into a contract to construct a new high school building within the city of St. Paul. During the month of June 1963, McGough hired Larson and Miller as construction workers after the building of the school had begun. A city building inspector notified McGough that nonresidents of Ram-

sey County were being employed in violation of the ordinance. The result was that McGough discharged all employees not residents of Ramsey County and the dismissed employees were replaced by residents. Larson and Miller are citizens of the State of Minnesota and of the United States of America.

We are required, in considering this case, to start from the premise that a municipal corporation is a governmental subdivision of limited powers, generally contained in the city charter or other enabling legislation. St. Paul operates under a home rule charter. Enactments of the governing body of a city must not only be within the authority delegated to it but also must not conflict with the Federal or State Constitution or state law. Furthermore, where the authority of the city to enact any given regulation or ordinance is, by its terms, general, an ordinance passed pursuant thereto must constitute a reasonable exercise of that power or it will be pronounced invalid. See, State v. Clarke Plumbing & Heating, Inc. 238 Minn. 192, 56 N. W. (2d) 667, and cases cited.

The city does not claim that it has direct authority to enact the ordinance; it contends that its authority derives from its general police powers and that its home rule charter provides that the city council shall have full power and authority to enact ordinances which promote the "general welfare, education, comfort, and well-being of the city and its inhabitants." St. Paul City Charter, § 126.

While we have in some instances construed similar provisions somewhat broadly, appellants cite no Minnesota cases which approve a municipality's enacting an ordinance similar to the one here involved. They cite City of Milwaukee v. Raulf, 164 Wis. 172, 159 N. W. 819, to support their contentions, but that case is concerned with an ordinance relating to hours of labor upon public works and can hardly be said to have any controlling effect upon the issues before us.

Appellants argue that no employee has a vested right to be in the employ of the city and that therefore it is free to grant employment on such terms and conditions as it may see fit to apply. Appellants, in support of the foregoing contention, cite Atkin v. Kansas, 191 U. S. 207, 24 S. Ct. 124, 48 L. ed. 148. But again, this case upholds a

statute providing an 8-hour day for laborers employed by the state or any of its municipalities, holding that it was for the state to prescribe the conditions under which it will permit work of that kind to be done. The case does not give consideration to the right of a fully accredited citizen to work where he will under applicable state and Federal constitutional provisions.

Appellants cite Ebbeson v. Board of Education, 18 Del. Ch. 37, 156 A. 286, which approved specifications restricting the bidding on a particular contract to residents of the State of Delaware. The Delaware court reasoned that, since the payments to be made were upon public works, they would have to be made from public funds and therefore the state might prefer in employment its own citizens; the legislature may have believed that the first duty was owing to them and that the common property should be used for the benefit of its common owners. We must examine into the facts in the case at bar in light of the court's reasoning in the Ebbeson case.

It must be clear, in the instant case, that a portion of the property taxes exacted from residents of St. Paul are paid to said city, to Ramsey County, and to the State of Minnesota, and that those citizens who are residents of Ramsey County but not residents of St. Paul pay property taxes to the respective villages, that is, the municipal subdivisions in which they reside, such as Shoreview, Roseville, and others. Thus, when the city limits contractors who are performing work under a contract with the city to employment of citizens of Ramsey County, it is of necessity conferring a benefit upon citizens of separate jurisdictions from the city, to whom the latter city is not responsible. If the provisions of the ordinance under consideration are valid, then similar restrictions against employment of citizens of political subdivisions other than those of Hennepin or Washington County would also be valid. For example, Dakota County residents could be discriminated against at the will of the city of St. Paul. Clearly, this is the type of discrimination which met with this court's disapproval in City of St. Paul v. Dalsin, 245 Minn. 325, 71 N. W. (2d) 855, cited by respondents.

The Dalsin case involved a St. Paul ordinance which required that persons engaging in sheet metal work, warm air heating, and ventila-

tion in St. Paul must have a license issued by the city. It further required that such person or firm establish and maintain a place of business in St. Paul if the municipality from which they came had a similar requirement with respect to a nonresident. This court found the ordinance unconstitutional because it was based upon a classification which had no reasonable basis and which discriminated between persons (nonresidents) similarly situated in violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution. This court in the Dalsin case said (245 Minn. 332, 71 N. W. [2d] 860):

"The fact that some St. Paul nonresidents live in communities which have requirements compelling nonresidents to maintain therein a place of business provides no reasonable basis for segregating and distinguishing them from other St. Paul nonresidents who happen to come from communities which have no such requirements."

Respondents also cite and rely on State ex rel. Greenwood v. Nolan, 108 Minn. 170, 122 N. W. 255, as controlling. In the Nolan case this court held an ordinance unconstitutional which discriminated between peddlers who were residents and nonresidents of the city of Hastings, Minnesota. Under that ordinance nonresidents of the city were required to procure a license, whereas residents were not. Relator, a nonresident, was convicted for selling his wares in that city without a license. This court held on appeal that the ordinance violated Minn. Const. art. 1, § 2, which provides, "No member of this State shall be * * * deprived of any of the rights or privileges secured to any citizen thereof." It further held that the ordinance violated the privileges and immunities clause of art. IV, § 2, and the Fourteenth Amendment of the United States Constitution and that the discrimination between citizens was not warranted. We think the same reasoning applies to the ordinance under consideration in the case at bar.[1]

---

[1] U. S. Const. art. IV, § 2, provides in part: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states."

U. S. Const. Amend. XIV, § 1, provides: "All persons born or naturalized in the United States * * * are citizens of the United States and

In an early case, City of St. Paul v. Laidler, 2 Minn. 159 (190), this court held that although the city of St. Paul had the power to enact sanitary regulations for the preservation of the lives and health of residents of the city, an ordinance could be held valid only if it conforms to this object and assumes to exercise no power further than necessary to attain it. This court, however, held that the particular ordinance involved constituted restraint of trade.

In City of St. Paul v. Traeger, 25 Minn. 248, 252, this court had occasion to set aside an ordinance as not authorized by the charter of the city, saying, "Under the general rule of construction applicable to municipal charters, the existence of powers of a legislative character must be shown by an express grant, or as incidental and necessary to the proper enjoyment and exercise of such as are expressly conferred. Nothing outside or beyond this can be taken by intendment or implication."

It is stated in 37 Am. Jur., Municipal Corporations, § 157, p. 773, that—

"* * * where a municipal corporation has merely been granted a general power to enact ordinances of a regulatory nature in behalf of the general welfare, the power so granted is not coterminous, within the corporate limits, with the police power that rests in the hands of the legislature of the state."

It is settled law that an ordinance passed under such grant of power may be so clearly unreasonable, or so arbitrary, oppressive, or partial as to raise the presumption that the legislature never intended to con-

---

of the state wherein they reside. * * * nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Minn. Const. art. 1, § 2, provides in part: "No member of this State shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

Minn. Const. art. 4, § 33, provides in part: "In all cases when a general law can be made applicable, no special law shall be enacted, * * * [thereafter explaining what shall be considered to be special legislation]."

fer the power to pass it, thus justifying a setting aside of the ordinance as a plain abuse of authority.

It has been held to be the rule that where the mode of the exercise of a power expressly granted is not prescribed, courts will undertake to determine whether the mode adopted is reasonable, for in no event will an arbitrary and unreasonable exercise of the power conferred be upheld by the judiciary. 5 McQuillin, Municipal Corporations (3 ed.) § 18.04.

In Village of Brooklyn Center v. Rippen, 255 Minn. 334, 96 N. W. (2d) 585, this court held that Brooklyn Center had no power to license boats or pass an ordinance therefor—that this was a statewide matter; that where the activity or the subject of local regulation is not "peculiarly local in character," the regulatory power under the general welfare clause is not to be extended beyond its scope unless it clearly appears that the legislature so intended.

Similarly, under the St. Paul charter it would seem that the activity of laborers is a statewide matter and not one for local regulation so long as the activity is not inherently dangerous to the health, welfare, safety, or morals of the people of the city.[2]

It is well established that ordinances must not discriminate in favor of or against any class of persons or property, but must be general in their nature and impartial in their operation and effect. See, 37 Am. Jur., Municipal Corporations, § 158, citing Farmer v. Nashville, 127 Tenn. 509, 156 S. W. 189, 45 L. R. A. (N.S.) 240.

It thus appears that the ordinance in the case at bar is partial and discriminatory both upon its face and in its operation for, by its very terms, the performance of the occupation of a laborer is permitted in the city of St. Paul if he lives in Ramsey County but is prohibited to him if he lives elsewhere.[3]

---

[2]As to the reasonableness of an ordinance, see Simrall & Co. v. City of Covington, 90 Ky. 444, 14 S. W. 369, 9 L. R. A. 556.

[3]For other authorities on the issues involved, see Gray v. Building Trades Council, 91 Minn. 171, 97 N. W. 663, 63 L. R. A. 753; State v. Pehrson, 205 Minn. 573, 287 N. W. 313, 123 A. L. R. 1045; Fairview Hospital Assn. v. Public Bldg. Service Union, 241 Minn. 523, 64 N. W. (2d) 16, 39 Minn. L. Rev. 322; Bohn v. Salt Lake City, 79 Utah 121, 8 P. (2d)

We think the ordinance under consideration on this appeal contravenes these guaranties. Such laws must be general and apply uniformly to all citizens irrespective of residence. They must conform to state and Federal constitutions and must not be based on class distinctions nor deny to any citizen the equal protection of the laws. As said by this court in State ex rel. Greenwood v. Nolan, "This is elementary and requires no reference to authorities." 108 Minn. 173, 122 N. W. 256. See State ex rel. Luria v. Wagener, 69 Minn. 206, 72 N. W. 67, 38 L. R. A. 677, wherein a statute purporting to license and regulate hawkers and peddlers throughout the state was held unconstitutional. It was later cited with other cases in support of this court's holding in the Nolan case. Mr. Justice Mitchell of this court concurred in the result arrived at in the Luria case. Not wishing to place the decision exclusively upon Minn. Const. art. 4, §§ 33 and 34, he said (69 Minn. 210, 72 N. W. 68):

"* * * I am of the opinion that, even if these sections had never been adopted, the act in question would have been invalid as 'class legislation,' because repugnant to section 2, art. 1, of the constitution, which declares that 'no member of this state shall be * * * deprived of any of the rights or privileges secured to any citizen thereof unless by the law of the land.' "

In reaching its conclusions in City of St. Paul v. Dalsin, *supra,* this court said that generally speaking, a municipality may, pursuant to its police power, regulate by license any business or trade which may injuriously affect the public health, morals, safety, convenience, or general welfare, and that since a municipal ordinance is presumed constitutional, the burden of proving that it is unreasonable or that the requisite public interest is not involved, and consequently that the ordinance does not come within the police power of the city, rests on the party attacking its validity. But this court held in the Dalsin case that

591, 81 A. L. R. 215; Sayre v. Phillips, 148 Pa. 482, 24 A. 76, 16 L. R. A. 49; City of Carrollton v. Bazzette, 159 Ill. 284, 42 N. E. 837, 31 L. R. A. 522; 16 Am. Jur. (2d) Constitutional Law, § 516; Commonwealth v. Hana, 195 Mass. 262, 81 N. E. 149, 11 L. R. A. (N.S.) 799; Williams v. McCartan (W. D. N. Y.) 212 F. 345.

a classification to be valid must embrace and uniformly affect all who are similarly situated and that the distinctions which separate those who are included from those who are excluded must, upon some reasonable view of the facts, be genuine and substantial so as to provide a reasonable—as distinguished from a merely capricious and arbitrary—basis for imposition of special legislative regulations.

We reach the conclusion that the ordinance involved on this appeal is, in so far as it discriminates between resident and nonresident citizens, unconstitutional and void.

Affirmed.