**In re Public CONSERVATORSHIP
OF Holly Ann FOSTER.**

**Nos. C4–95–118, C6–95–119.**

Court of Appeals of Minnesota.

Aug. 8, 1995.

Review Granted Oct. 10, 1995.

Michael O. Freeman, Hennepin County Atty., Jay L. Arneson, Asst. County Atty., Minneapolis, for appellant Hennepin County.

Hubert H. Humphrey, III, Atty. Gen., Paul M. Landskroener, Asst. Atty. Gen., St. Paul, for appellant Com'r of Human Services.

Gail Rising, Minneapolis, Anita Vanderhorck, Plymouth, for respondent Foster.

James M. Crist, Maser, Amundson & Crist, P.A., Minneapolis, for amicus curiae Minn. Ass'n for Guardianship and Conservatorship.

Barbara J. Blumer, Oborvich & Gartner, Chartered, Eagan, for amicus curiae Minn. Ass'n of Nursing Home Medical Directors and Physicians.

Considered and decided by KLAPHAKE, P.J., and NORTON and SCHULTZ,* JJ.

## OPINION

HAROLD W. SCHULTZ, Judge.

A petition was filed to appoint the Commissioner of Human Services as public conservator of Holly Foster. The petitioner later moved that the Commissioner be given the specific power to consent to neuroleptic medication on Foster's behalf. The district court appointed the Commissioner as public conservator and granted general conservatorship powers, but denied the Commissioner the power to consent to neuroleptic medication. The Commissioner of Human Services and Hennepin County appeal. The Minnesota Association for Guardianship and Conservatorship and the Minnesota Association of Nursing Home Medical Directors and Physicians filed amicus briefs. We reverse.

## FACTS

Holly Foster, born on December 15, 1956, has severe mental and physical disabilities. Her primary disability is mental retardation in the moderate to severe range. She suffers from a mental illness as well, currently diagnosed as schizoaffective disorder, which is treated with neuroleptic medication. She is also legally blind. She lives in a home with three other developmentally disabled adults and is employed by Lutheran Brotherhood.

Foster has not previously had a guardian or conservator despite her disabilities. In late 1993 and early 1994, her case manager met with her mother to discuss the need to establish a conservatorship. Neither Foster's mother nor her sister were willing to become her conservator, and her mother requested that the Commissioner assume the responsibility.

A program manager with the Hennepin County Bureau of Social Services petitioned the district court to appoint the Commissioner of Human Services as Foster's public conservator. The petition alleged that Foster was incapable of exercising certain powers over her personal affairs, including consenting to medical care, and requested that the Commissioner be given the power to make decisions in those areas.

Appellants then became aware of decisions in public conservatorship cases in which the district court required that certain procedures be followed before it would allow the public conservator the specific power to consent to neuroleptic medication, even if it granted the general power to consent to medical care. The court required that the conservator specifically petition for the power to consent to neuroleptic medication. It also required written medical reports regarding the risks and less restrictive alternatives, and written approval by an independent non-treating multi-disciplinary treatment review panel. The court would then make a determination as to the conservatee's competency to consent to neuroleptic medication and the need for neuroleptic medication, and would grant the conservator the power to consent for up to one year if the evidence warranted it. If the conservatee or the review panel objected, the court required a full *Jarvis*–like hearing.

Consequently, the Commissioner filed a motion specifying that neuroleptic medication was a form of medical treatment for which

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

the Commissioner sought power to consent on Foster's behalf. After the hearing, in two separate orders, the district court issued its ruling on the petition.[1] It granted the petition to appoint the Commissioner as public conservator for Foster, and authorized the Commissioner to exercise certain powers on behalf of Foster. It found, in relevant part, that Foster was incapable of exercising the power to "consent to necessary medical or other professional care or treatment." It granted the Commissioner the power to consent to such care, except that "the conservator has no power[ ] to give consent to the administration of neuroleptic medications without further order of this Court" pursuant to its requirements. The court found insufficient evidence to show neuroleptic medication was in Foster's best interests, or that Foster was incompetent to consent.

The Commissioner of Human Services and Hennepin County appeal from the trial court orders, and this court consolidated the appeals. The Minnesota Association of Nursing Home Medical Directors and Physicians and the Minnesota Association for Guardianship and Conservatorship filed amicus briefs.

The appeals suspended the operation of the district court orders, unless this court ordered otherwise. Minn.Stat. § 525.714 (1994); see Minn.Stat. § 252A.21, subd. 1 (1994) (Commissioner may appeal court order in manner prescribed by sections 525.71–.731). The Commissioner moved to remove the stay to allow her to act as public conservator, and to grant her temporary power to consent to neuroleptic medication on behalf of Foster pending resolution of the appeal. Foster advised this court that she did not object and this court granted the motion.

Foster moved to strike portions of the brief and appendices submitted by appellants and amici curiae. This court deferred the motion to the panel that would consider the appeal on the merits.

1. Five petitions were consolidated for consideration by the district court, but only the decision in Foster's case is before this court.

2. A public guardian exercises all of the designated powers, while a public conservator exercises

## ISSUES

1. Did the district court properly determine that before a public conservator may be given the power to consent to administration of neuroleptic medication to a public conservatee, specific notice and proof as to the conservatee's incompetency and need for medication are required?

2. Should the motion to strike be granted?

## ANALYSIS

■■■ 1. Generally, a district court has broad powers to appoint a conservator, and its decision will not be interfered with absent an abuse of discretion. *In re Conservatorship of Edelman*, 448 N.W.2d 542, 544 (Minn. App.1989). However, a district court's construction of a statute or constitutional provision is a question of law, and the appellate court is not bound by the trial court's decision. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993). A statute bears the presumption of validity, and the "party challenging the constitutionality of the statute has the onus of establishing beyond a reasonable doubt that the statute violates a claimed right." *In re Schmidt*, 443 N.W.2d 824, 826 (Minn.1989).

■■ The district court appointed the Commissioner of Human Services as public conservator for Foster and granted all of the powers sought, including the power to consent to medical care, except it refused to allow the Commissioner to consent to the administration of neuroleptic medications without further order of the court. It is only the decision as to neuroleptics which is on review in this appeal.

The statutory procedures which the legislature adopted to appoint a public conservator[2] are found in the Public Guardianship for Adults with Mental Retardation Act, Minn. Stat. ch. 252A (1994). A party seeking appointment of a public conservator must set forth in the petition the powers the petitioner

only some of the powers. Minn.Stat. § 252A.02, subds. 7, 8 (1994). Because this case involves only a public conservator, references to public guardians will be omitted.

believes necessary to protect and supervise the proposed conservatee. Minn.Stat. § 252A.06, subd. 2(7). The provisions must be explained to the proposed conservatee to the extent possible. Minn.Stat. § 252A.081, subd. 2. The proposed conservatee is entitled to a court-appointed attorney. Minn. Stat. § 252A.09, subd. 1. Counsel has the full right of subpoena. *Id.*, subd. 2.

The proposed conservatee has the right to an evidentiary hearing, at which the petitioner must prove the petition by clear and convincing evidence. Minn.Stat. § 525.551, subd. 3 (1994); Minn.Stat. § 252A.101, subd. 1 (1994). The court shall grant the specific powers necessary for the Commissioner to act as public conservator. Minn.Stat. § 252A.101, subd. 5(b).

■ The court may grant powers and duties to provide for the needs of the incapacitated person authorized under the general conservatorship statute, Minn.Stat. § 525.56, subds. 1–3, as well as additional powers specified in the public guardianship statute, Minn.Stat. § 252A.111, subd. 2. The intent of the statute is to require the court to grant the least amount of power necessary to protect the conservatee. *In re Guardianship of Mikulanec,* 356 N.W.2d 683, 688 (Minn.1984). The statute specifically authorizes the court to grant the conservator the power to consent to allow the conservatee to receive necessary medical care. Minn.Stat. § 525.56, subd. 3(4)(a). However, for certain types of treatment, court approval is required. *Id.* These include psychosurgery, electroshock, sterilization and experimental treatment. *Id.*

The court procedure for consent to psychosurgery and the other exceptions includes notice, the right to counsel, and a determination of the best interests of the conservatee. Minn.Stat. § 525.56, subd. 3(4)(b). The court must consider a written medical report which specifically considers the medical risks, whether alternative, less restrictive methods of treatment can be used to protect the best interests of the conservatee, and, in the case of a public conservatee, the recommendation of the Commissioner. *Id.*

The same court approval procedure is not required for a public conservator to consent to neuroleptic medication for the conservatee. In fact, the statute provides that a conservator who acts within the scope of its authority is not criminally or civilly liable for the provision of any necessary medical care including, but not limited to, the administration of psychotropic medication to which the conservator has consented. Minn.Stat. § 525.56, subd. 3(4)(e).

The legislature, however, intended that additional procedures be adopted. It directed the Commissioner to adopt rules to implement chapter 252A, specifically including standards for the use of psychotropic [3] medication. Minn.Stat. § 252A.21, subd. 2. The Commissioner promulgated rules accordingly. Minn.R. 9525.3010–.3100 (1993 & Supp. No. 2 1994).[4] Under these rules, the county staff acting as public guardian has authority to give informed consent for the use of neuroleptic medication. Minn.R. 9525.3050, subpt. 1. Staff may not consent to the use of neuroleptic medication unless it is documented and reviewed, including a description of the target behavior or condition for which the medication is intended to be used, benefits, other alternatives considered, and specific information about the medication. Minn.R. 9525.3050, subpt. 2. Consent may be withdrawn any time, and automatically expires one year from the date of consent unless renewed. *Id.* Side effects must be monitored. *Id.*, subpts. 3, 4. There must also be a data review of the target behavior. *Id.*, subpt. 5.

The district court, however, refused to give the Commissioner "blanket authority" to give informed consent to neuroleptics for public conservatees. Instead, it required that the Commissioner give specific notice that it

---

**3.** Psychotropic medication is defined to include neuroleptic medication. Minn.R. 9525.3015, subpt. 24(A). This opinion will use the term neuroleptic medication. *See Jarvis v. Levine,* 418 N.W.2d 139, 140 n. 1 (Minn.1988) (taking this approach).

**4.** Minn.R. 9525.0004–.0036 (Supp. No. 2 1994) establishes standards governing case management and services to persons with mental retardation generally.

sought this power, and clear and convincing proof that the conservatee was incompetent to give his or her own informed consent to the intrusive treatment and that the procedure was in the conservatee's best interests. The court required submission of a prescribing physician's statement in support of the administration of neuroleptic medication, as well as a report from a nontreating multidisciplinary treatment review panel regarding the administration of neuroleptic medication. It provided forms in which the necessary information could be given. It indicated that if the conservatee or multi-disciplinary review panel refused, a *Jarvis*-type hearing was required. As to Foster, the court found the standard was not met.

The court required these additional procedures because it determined that due process and the right to privacy required that persons under a public conservatorship must be given the same rights regarding administration of neuroleptic medication as those under a commitment. It found the statutes and rules described above did not provide adequate protection. The court also determined that an incapacity to consent to medical care did not mean that the conservatee was incompetent to consent to neuroleptic medication. Finally, the court found the fact the legislature did not add neuroleptic medication to the medical treatments under Minn. Stat. § 525.56, subd. 3(4)(a) that require court approval before they may be administered to a public conservatee did not preclude it from determining that court approval was nonetheless required.

■ The issue of incompetency will be addressed first. Before a court can authorize involuntary treatment with neuroleptic medication of a nonconsenting, committed mentally ill person, there must be a determination that the person is incompetent to make that decision. *Jarvis v. Levine*, 418 N.W.2d 139, 148 n. 7 (Minn.1988); *see In re Peterson*, 446 N.W.2d 669, 673 (Minn.App.1989) (definition of competency), *pet. for rev. denied* (Minn. Dec. 1, 1989). The *Jarvis* court recognized that mentally ill patients can be competent to refuse the intrusive treatment. *Jarvis*, 418 N.W.2d at 148.

■ This case, however, involves a mentally retarded person whom the court determined did not have the capacity to consent to medical care generally pursuant to Minn. Stat. § 525.56, subd. 3(4)(a). While appointment of a conservator under the general guardianship statute is not evidence of incompetency, Minn.Stat. § 525.54, subd. 5, the Public Guardianship for Adults with Mental Retardation Act specifically provides:

An appointment of the commissioner as conservator shall not constitute a judicial finding that the mentally retarded person is legally incompetent except for the restrictions which the conservatorship places on the conservatee.

Minn.Stat. § 252A.12. Thus, the statute recognizes that as to the determined areas of incapacity, the public conservatee is incompetent. Further, the supreme court seems to have assumed without discussion that a mentally retarded person is incompetent to consent to neuroleptic medication. *Blilie*, 494 N.W.2d at 882–83 & n. 2 (applying provisions of Minn.Stat. § 253B.03, subd. 6c(d) (1992), authorizing administration of neuroleptics without court review to nonobjecting committed persons who are not competent to consent, upon approval by guardian ad litem and multi-disciplinary treatment review panel).

The right to privacy and procedural due process will be addressed next. The rights afforded involuntarily committed patients subject to intrusive treatment was first addressed in *Price v. Sheppard*, 307 Minn. 250, 239 N.W.2d 905 (1976). The court held that when a patient or guardian refuses consent to intrusive treatment, specifically psychosurgery or electroshock therapy, the decision should not be left solely within the discretion of the medical personnel at state hospitals. *Id.* at 262, 239 N.W.2d at 913. Instead, after a petition and appointment of a guardian ad litem, the court must determine the necessity and reasonableness of the treatment in an adversary proceeding. *Id.* The *Price* holding was extended to apply to administration of neuroleptic medication to nonconsenting incompetent committed patients, based upon the intrusiveness of the treatment. *Jarvis*, 418 N.W.2d at 148; *see Schmidt*, 443 N.W.2d at 827 (upholding statutory procedures re-

garding administration of neuroleptic medication to mentally ill committed persons enacted following *Jarvis* ). A committed mentally retarded person is entitled to the same procedural protections. *Blilie,* 494 N.W.2d at 883.

In *Price* and *Jarvis,* the supreme court's fundamental concern, as later articulated, was that the patient should be protected from "the exercise of sole unrestrained discretion of the medical personnel at our state hospitals with respect to the use of such invasive procedures," *Schmidt,* 443 N.W.2d at 827, and that "intrusive therapy should not be authorized by persons engaged in providing direct care to a patient," *Blilie,* 494 N.W.2d at 883. This right to privacy was enforced through the addition of procedural protections. *See Blilie,* 494 N.W.2d at 883; *Schmidt,* 443 N.W.2d at 827.

In this case, the public conservatee is not a committed person subject to the discretion of state medical personnel, and the Commissioner is not engaged in providing direct care to the conservatee. The Commissioner as conservator consents to treatment by Foster's physician. Under the rules, which have the force of law, consent to neuroleptic medication, which expires after one year, may not be given unless the need, benefits, and alternatives are documented and the side effects monitored. Minn.R. 9525.3050, subpts. 3–5. These procedures protect the conservatee's right to privacy.

The district court, however, determined the procedural safeguards in the statute were inadequate to protect the conservatee. But unlike the court approval procedures required for psychosurgery and electroshock treatment, *see* Minn.Stat. § 525.56, subd. 3(4)(b), no specific court approval is required under the statute to approve neuroleptic medication. Instead, various safeguards are set out by rule. The Commissioner, pursuant to Minn.Stat. § 252A.21, subd. 2, promulgated rules governing the use of neuroleptics for public conservatees, as outlined above. *See* Minn.R. 9525.3050.

■ When a procedural due process challenge is mounted, the reviewing court should apply the three-part balancing inquiry set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). *See Heddan v. Dirkswager,* 336 N.W.2d 54, 59 (Minn.1983) (adopting *Mathews* analysis to hold implied consent law constitutional). The reviewing court must determine whether the process adequately balanced (1) the private interest being affected by the government's action, (2) the risk that the process will result in erroneous deprivation of the private interest and the probable value of additional process, and (3) the state's interest in the procedure provided, including the administrative burden and expense the additional procedures sought would require. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

The first factor is the private interest affected by government action. *Id.* A conservatee's private interest in making medical decisions for herself is of the highest order and the procedures provided to deprive a person of this right should ensure a high degree of reliability.

The second question is whether the statutory procedures required provide assurances of reliability commensurate with the importance of the private interests at stake. *Id.* The general policy underlying the statute is "to make it harder to create a guardianship and, once one is created, that the powers of the guardian should be kept to the bare minimum necessary to care for the ward's needs." *Mikulanec,* 356 N.W.2d at 687. The Commissioner asserts that the guardianship statute, described above, and rules promulgated pursuant to the statute provide the proposed conservatees a full panoply of procedural rights which minimize the chance of an erroneous decision. Finally, the Commissioner argues the state's interest in not duplicating or complicating the statutory procedures is strong; these procedures would add considerable expense and delay, with little, if any, additional assurance of more accurate decisionmaking.

The legislature did not include treatment with neuroleptics in the types of treatment requiring specific court approval for conservatees. *See* Minn.Stat. § 525.56, subd. 3(4)(b). The legislative decision that a conservator may consent to medical care for the conservatee includes consent to neuroleptic

medication, without additional court approval. To add the requirement of specific court approval would mean that the court was legislating rather than adjudicating. The comprehensive procedural safeguards in the statute and rules ensure that mentally retarded persons will not be deprived of the right to make important decisions on their own without due process, and that their right to privacy is protected. In conclusion, we hold that the present scheme protects the conservatee's rights, and that the additional proceedings imposed by the trial court are not required.

2. Foster moved to strike portions of the brief and appendices submitted by appellants and amici curiae on the grounds that these refer to and include documents and information not part of the record. The special term panel deferred the motion to strike and referred it to the panel assigned to consider the appeal on the merits.

■ Papers filed in the trial court, and exhibits and transcripts of the proceedings, if any, shall constitute the record on appeal. Minn.R.Civ.App.P. 110.01. Only matters before the trial court may be considered by the reviewing court. *See Thiele v. Stich*, 425 N.W.2d 580, 582–83 (Minn.1988). A reviewing court "will strike documents included in a party's brief that are not part of the appellate record." *Fabio v. Bellomo*, 489 N.W.2d 241, 246 (Minn.App.1992), *aff'd*, 504 N.W.2d 758 (Minn.1993).

■ Foster challenges certain information contained in the amicus briefs. The purpose of an amicus brief is to inform the court "as to facts or situations which may have escaped consideration or to remind the court of legal matters which have escaped its notice and regarding which it appears to be in danger of making a wrong interpretation." *State v. Finley*, 242 Minn. 288, 294–95, 64 N.W.2d 769, 773 (1954). The amici performed the function delegated to them, and the motion to strike is denied.

Foster also objects to Hennepin County's discussion of certain facts, contending they are not contained in the record. Hennepin County properly responded to the issues and facts discussed by the trial court.

■ Foster seeks to strike forms in the appendices which are not in the trial court record. These forms are those the trial court required to be completed before it would consider granting a petition giving a conservator the power to consent to neuroleptic medication, and we see nothing improper about attaching them.

■ Foster also seeks to strike a document in the Commissioner's appendix entitled "Psychotropic Medication Monitoring Manual and Checklist for Rule 34 Facilities." This checklist is incorporated by reference in Minn.R. 9525.0325, subpt. 3(L) (1993). Including it in the appendix is no different than including the text of the applicable rule and was submitted merely for the convenience of the court.

### DECISION

The district court's decision that a public conservator who is given the power to consent to necessary medical care for the public conservatee must also obtain court approval to consent to neuroleptic medication is reversed.

The motion to strike portions of the parties' briefs is denied.

**Reversed.**