Charles E. WEDEMEYER, Appellant,

v.

CITY OF MINNEAPOLIS, Respondent.

No. C5–95–1391.

Court of Appeals of Minnesota.

Nov. 28, 1995.

Roger A. Peterson, Therese Dosch Anderson, Peterson, Engberg & Peterson, Minneapolis, for appellant.

Surell Brady, City Attorney, Michael T. Norton, Assistant City Attorney, Minneapolis, for respondent.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

Considered and decided by PARKER, P.J., and LANSING and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

A municipality's temporary suspension of a conditional use permit application to operate a business, which did not conform to the municipality's comprehensive zoning plan, pending consideration and adoption of a moratorium ordinance on the issuance of such permits did not exceed the municipality's authority nor was the temporary suspension enacted in bad faith or in a discriminatory fashion.

## FACTS

Appellant Charles Wedemeyer leased a vacant store in the Camden neighborhood of Minneapolis in December 1993. The Minneapolis comprehensive zoning plan placed the store site in a Community Service District (B3S–2). Wedemeyer hoped to open a pawnshop at the site. Pawnshops are a nonconforming use in all Community Service Districts and pawnshop owners must possess a conditional use permit to operate in those areas. Minneapolis Code of Ordinances § 540.1410(13) (1995). Wedemeyer applied for a conditional use permit to operate a pawnshop on the site on April 12, 1994.

On April 15, 1994, Minneapolis Council Member Alice Rainville asked the Minneapolis City Attorney to draft a moratorium ordinance on permits, licenses, and other approvals necessary to operate pawnshops in Community Service Districts. A proposed moratorium ordinance was read at the Minneapolis City Council meeting later that day and the council referred the matter to its Zoning and Planning Committee for public hearings.

When Rainville asked the city attorney to draft a moratorium ordinance, processing of Wedemeyer's conditional use permit application stopped in accord with Minneapolis Code of Ordinances section 534.470(c)(1) (1990) (hereinafter MCO). On June 10 Wedemeyer

art. VI, § 2.

applied for a waiver from the processing freeze.

On June 11, 1994, the Zoning and Planning Committee of the city council scheduled a public hearing on the proposed moratorium ordinance for June 21. At the June 21 hearing, Rainville and others spoke in support of the proposed ordinance and explained that pawnshops had a negative connotation and were not a good match for Community Service Districts. The committee endorsed the proposed moratorium. The city council adopted the moratorium ordinance on July 1, and it became effective on July 9, 1994.

The Zoning and Planning Committee considered Wedemeyer's waiver application on August 2. The committee recommended denial, and the city council denied the waiver on August 12, 1994.

Wedemeyer brought the present action seeking a declaratory judgment that MCO § 534.470(c)(1) is invalid and that the city froze his application in bad faith or with discrimination. Both parties moved for summary judgment. The district court granted summary judgment to respondent city, and Wedemeyer appeals that judgment.

## ISSUES

I. Is MCO § 534.470(c)(1) a valid municipal ordinance?

II. Was the interim freeze on Wedemeyer's conditional use permit application enacted in good faith and without discrimination?

## ANALYSIS

■ On appeal from summary judgment, a reviewing court must view the evidence in a light most favorable to the nonmoving party and determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The parties have stipulated to the facts and dispute only the application of the law. Interpretation of zoning ordinances is a question of law. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn.1980). This court reviews questions of law de novo. *Frost–Benco Elec. Ass'n v.*

*Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I.

Wedemeyer argues that MCO § 534.470(c)(1) exceeds the authority delegated to municipalities by the Minnesota Legislature and violates certain procedural requirements. MCO § 4.470 allows the city to adopt interim zoning ordinances when the city is conducting studies or holding hearings on proposed modifications to the city's comprehensive zoning plan. These ordinances are passed in the same manner as other ordinances. There is always a gap in time between the introduction of a proposed ordinance and its effective date. MCO § 534.470(c)(1) fills that gap:

> From either the date of introduction of such interim ordinance, or from the date the planning director or a city council member requests the city attorney to draft such interim ordinance for introduction at the next regularly scheduled council meeting, no use, development, project or subdivision shall be established, nor shall any building permit, administrative waiver, review or approval of any application, or any application for a variance or conditional use permit be granted or further processed, which concern[s] the geographical area or subject matter of the interim ordinance, pending a final decision on the adoption of the interim ordinance.

■ Zoning ordinances must be consistent with the Minnesota Constitution and statutes. *State v. Clarke Plumbing & Heating, Inc.*, 238 Minn. 192, 194, 56 N.W.2d 667, 669 (1952). An ordinance is valid if it is complementary to a statute. *City of St. Paul v. Olson*, 300 Minn. 455, 456, 220 N.W.2d 484, 485 (1974).

The Minnesota Legislature granted municipalities the general authority to implement comprehensive zoning plans. Minn.Stat. §§ 462.351, .353 (1994). It has granted municipalities the specific authority to enact interim ordinances to regulate, restrict, or prohibit any use or development in order to protect the planning process. Minn.Stat. § 462.355, subd. 4 (1994).

Wedemeyer argues that the freeze on conditional use applications applied under MCO § 534.470(c)(1) may have the same effect as an interim ordinance enacted under Minn.Stat. § 462.355, subd. 4, and, therefore, requires the same formal procedures required by the statute. But Minn.Stat. § 462.355, subd. 4 is permissive; it does not prohibit less formal approaches. The statute permits interim ordinances regulating, restricting, or prohibiting any land use or development. Minn.Stat. § 462.355, subd. 4. The Minneapolis ordinance merely freezes applications pending decisions on moratorium ordinances. MCO § 534.470(c)(1). The statute and the ordinance do not conflict; they provide different procedures that yield different results. The ability of the city to stay permit applications protects the integrity of the city's planning process and complements rather than exceeds the authority of the statute.

Minnesota has long recognized the legitimate general powers of municipalities to exercise their police powers by regulating land use and development. *Alexander Co. v. City of Owatonna,* 222 Minn. 312, 323, 24 N.W.2d 244, 251 (1946); *In re Wilson,* 32 Minn. 145, 148, 19 N.W. 723, 724 (1884). The power to regulate includes the power to prohibit certain businesses in designated areas. *Alexander Co.,* 222 Minn. at 331, 24 N.W.2d at 255. An individual's right to operate a specific business at a specific location is subordinate to the municipality's police power; no individual can acquire a vested right to a particular zoning scheme. *State ex rel. Rose Bros. Lumber & Supply Co. v. Clousing,* 198 Minn. 35, 44–45, 268 N.W. 844, 849 (1936).

Municipalities have wide latitude in exercising their police powers in zoning decisions. Their decisions are generally undisturbed if the decision bears a substantial relation to a legitimate public interest. *Alexander Co.,* 222 Minn. at 323–24, 24 N.W.2d at 251. Under the general police powers, municipalities may enact a moratorium on development as long as it is of limited duration and appropriate studies or zoning ordinances are expeditiously adopted. *Almquist v. Town of Marshan,* 308 Minn. 52, 65, 245 N.W.2d 819, 826 (1976). Municipalities may

abuse this power. *See Alexander v. City of Minneapolis,* 267 Minn. 155, 158–59, 125 N.W.2d 583, 586 (1963) (rejecting hold order of indefinite duration on building permits for property uses that conformed to the city's zoning plan). The interim freeze on Wedemeyer's conditional use permit application lasted only eleven weeks. The freeze applied for a brief period of time while the city council held hearings and considered a moratorium ordinance. Wedemeyer's concerns about abuse of this process did not materialize in this case.

Wedemeyer contends that the freeze process failed to follow proper procedures required to pass an ordinance. This argument presupposes that the interim stay must follow the same procedures as ordinances. MCO § 534.470(c)(1) provides for an informal process to enact these temporary stays, and does not require a formal ordinance. Public hearings and committee considerations on pawnshops in Community Service Districts were ongoing throughout the eleven-week freeze. Statutes mandating procedures for enacting ordinances do not apply.

Policy concerns weigh heavily in favor of permitting municipalities to enact interim stays on conditional use permit applications. Wedemeyer argues that a city must formally pass an ordinance amending its zoning plan before freezing a permit application. Under that system, a city would need to anticipate all future, and possibly harmful, uses for property and enact formal ordinances before any applications were submitted or else it would be effectively estopped from rejecting or even delaying those applications. Zoning decisions require time and attention. *Almquist,* 308 Minn. at 67, 245 N.W.2d at 827. Upholding only moratoria that take effect after the adoption of a formal moratorium ordinance would be " 'like locking the stable after the horse is stolen.' " *Id.* (quoting *Downham v. City Council,* 58 F.2d 784, 788 (E.D.Va.1932)).

The permissive nature of Minn.Stat. § 462.355, subd. 4, the broad police powers of a municipality to enact an interim moratorium, and public policy concerns all favor the validity of MCO § 534.470(c)(1). The ordinance does not exceed the authority of the

city and is a proper and legitimate exercise of the city's general power and its responsibility to regulate land use and development in the public's interest.

## II.

■ Wedemeyer argues that the city's suspension of his permit application was enacted in bad faith or with discrimination. Minnesota has not adopted a specific test to evaluate the propriety of an interim freeze on applications.

■ Generally, municipal ordinances enacted pursuant to the police power are valid, absent affirmative proof that the restriction is clearly discriminatory or arbitrary and without any substantial relation to the public health, safety, or general welfare. *Naegele Outdoor Advertising Co. v. Village of Minnetonka*, 281 Minn. 492, 494, 162 N.W.2d 206, 209 (1968). A municipality's zoning decision is not arbitrary or capricious when at least one of the rationales for the decision is reasonably related to the promotion of the public health, safety, or general welfare of the community. *St. Croix Dev., Inc. v. City of Apple Valley*, 446 N.W.2d 392, 398 (Minn. App.1989), *review denied* (Minn. Dec. 1, 1989).

■ Wedemeyer bears the burden of showing that the stated reasons are either without factual support or legally insufficient. *Parranto Bros., Inc. v. City of New Brighton*, 425 N.W.2d 585, 589 (Minn.App.1988), *review denied* (Minn. July 28, 1988). Some moratoria have been rejected as arbitrary and capricious. *See Ostrand v. Village of N. St. Paul*, 275 Minn. 440, 446–47, 147 N.W.2d 571, 575 (1966) (invalidating two-year freeze on building permits for permitted uses of a property when city produced no evidence that freeze was necessary to protect public interests); *Medical Servs. v. City of Savage*, 487 N.W.2d 263, 267 (Minn.App.1992) (invalidating moratorium on building permits for a permitted use when city was aware of development plans for over two years).

■ The parties stipulated that the city enacted the freeze on Wedemeyer's conditional use permit application out of concern for the propriety of pawnshops in the Community Service Districts. Preserving the status quo pending further study of comprehensive zoning plans constitutes "good faith." *Carl Bolander & Sons, Inc. v. City of Minneapolis*, 378 N.W.2d 826, 830 (Minn.App.1985), *review denied* (Minn. Feb. 14, 1986). Although the record does not explain the reasons for the initial stay on Wedemeyer's application, the freeze preserved the status quo on all conditional use permits for pawnshops pending further consideration. That consideration resulted in a valid moratorium ordinance eleven weeks later. Wedemeyer speculates that Rainville, whose request to the city attorney commenced the freeze, lacked sufficient understanding of the pawnshop industry. On the stipulated facts submitted to the district court, this is insufficient to prove bad faith or discrimination. *See Oscar P. Gustafson Co. v. City of Minneapolis*, 231 Minn. 271, 276–77, 42 N.W.2d 809, 812 (1950) (motives of legislator are normally irrelevant).

## DECISION

Minneapolis Code of Ordinances section 540.470(c)(1), freezing conditional use permit applications while the city council considers ordinances affecting the area or subject matter of the permit application, is a valid municipal act. The stay of Wedemeyer's conditional use permit application for a nonconforming use during the city council's consideration of a moratorium ordinance on new pawnshop conditional use permits in Community Service Districts was a valid municipal act.

**Affirmed.**