**DI MA CORP., et al., Appellants,**

v.

**The CITY OF ST. CLOUD, Respondent.**

No. C2–96–1584.

Court of Appeals of Minnesota.

April 15, 1997.

Review Dismissed June 5, 1997.

---

Randall D.B. Tigue, Randall Tigue Law Office, P.A., Minneapolis, for Appellants.

Douglas J. Schiltz, Joseph B. Marshall, Marshall & Associates, P.A., Circle Pines, for Respondent.

Considered and decided by KLAPHAKE, P.J., and RANDALL, and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

DI MA Corporation, Malcolm, Inc., and Compel Corporation brought this action challenging the constitutionality of the City of St. Cloud's ordinances regulating adult use establishments. In addition, in relevant part, DI MA and Malcolm sought injunctive relief against the city to prevent enforcement of the amortization ordinance, and Compel sought damages against the city because its club was temporarily closed under the ordinance and ultimately went out of business.

A trial was held before a jury, which returned a special verdict in favor of the city. The trial court concluded that the ordinances were constitutional and their enactment satisfied statutory requirements. Appellants moved for amended findings and, in the alternative, for a new trial. The court amended the basis for its conclusions of law in part, but otherwise denied the motions. This appeal followed. We affirm in part and reverse in part.

## FACTS

Appellant DI MA Corporation owns and operates Adult Book & Cinema, the only adult bookstore in St. Cloud. Appellant Malcolm, Inc. owns the real estate on which the adult bookstore is located. Appellant Compel Corporation briefly operated a nonalcoholic nightclub in St. Cloud, known as the Compel Club, that featured live nude dance entertainment.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

In May 1991, an article in the St. Cloud State University student newspaper discussed alleged high risk sexual activities occurring in the adult bookstore's individual viewing booths and concern about the spread of AIDS. Tim Forby, *AIDS Risk Concern at Adult Book & Cinema*, U. Chron., May 7, 1991, at 1. In part as a result of the article, a proposal was brought before the city council on August 5, 1991, to enact an ordinance addressing these health problems. At an August 19, 1991 public hearing on the ordinance, a former manager at the bookstore who suffered from AIDS said he had complained about this activity for over two years, and said he probably contracted AIDS at the bookstore. A manager of the next-door fast food restaurant said it affected his business, and explained customers and employees had been solicited for sex in his parking lot. The city attorney noted he had received information from adjacent business owners and members of the gay community as to this sexual activity. Ordinance 1535, the high risk sexual conduct ordinance, was enacted, in part based on a judicially approved Minneapolis ordinance.

Later, in October 1991, the city health department inspected the adult bookstore and found it was not in compliance with the high risk sexual conduct ordinance. The health director testified at trial that he discovered what appeared to be human semen in various stages of dehydration on the benches, walls and floors of the private viewing booths. The lighting was not in compliance, the booths had doors, and some booths had holes in the walls in which a person in one booth could expose his genitals to someone in an adjacent booth, all in violation of the high risk sexual conduct ordinance.

Meanwhile, in early August 1991, planning director Patti Gartland, city attorney Jan Petersen, and the planning commission began preparation of a proposed zoning ordinance regulating adult use establishments. The planning commission considered the proposed zoning ordinance at meetings in August, September, and October 1991, and recommended a motion to add an adult use ordinance.

Evidence was received at trial as to the type of information the city relied on in addressing the ordinance. The St. Cloud police chief testified he met with planning commission members during this period and briefed them as to citizen complaints about the bookstore. The city council president testified he was aware of the citizen complaints including cruising, solicitation of males sitting in the parking lot of adjoining restaurants, and bookstore patrons using restaurant restroom facilities. He also testified that in 1989 he and all council members received a copy of the Minnesota Attorney General's study on regulation of sexually-oriented businesses. Hubert H. Humphrey, III, *Report of the Attorney General's Working Group on the Regulation of Sexually Oriented Businesses* (1989). He received another copy of the same report in 1991, and distributed it to his colleagues because it was directly related to the planning committee work. To the best of his knowledge, city council members received copies of this report as well as studies and case law from the planning commission prior to the October 28, 1991, city council meeting.

The full St. Cloud City Council considered the proposed adult use zoning ordinance on October 14, 1991, as well as on October 28, 1991. On October 28, a public hearing was held and planning director Gartland addressed the full city council, describing the purposes and effect of the proposed ordinance change. Gartland cited and relied on results of significant litigation in which such ordinances from other cities have been upheld in court.

On November 4, 1991, the city council enacted ordinance 1545. This ordinance provides that an adult use establishment, such as an adult bookstore or adult cabaret, may be located only in I–1, light industrial, and I–2, general industrial, districts, and in addition may not be within 1,320 lineal feet from any other adult business use or within 350 lineal feet from any hotel, motel, nursing home, housing for the elderly, daycare facility, church, school, and any residentially zoned property. The minutes refer to reliance, at least in part, on a similar Minneapolis ordinance recently upheld by the Eighth Circuit

Court of Appeals. The city council returned to the planning commission the issue of whether there should be a two-year amortization for existing adult uses.

When ordinance 1545 was adopted, Adult Book & Cinema was an adult bookstore within the meaning of ordinance 1545 and, at the time, was the only known adult use existing in the city. It was a nonconforming use under the terms of the ordinance in at least two respects: it was not located within an I–1 or I–2 industrial zoning district and it was within 350 feet of a motel. Pursuant to the provisions of the general zoning ordinance governing nonconforming uses, it was allowed to remain at its current site.

The planning commission began to consider proposed ordinance 1551. That ordinance provided that nonconforming adult use establishments were permitted only until December 31, 1993, when they would become unlawful. The zoning administrator was to advise such establishments of the deadline by July 1, 1992. The property owner could request an extension of the compliance date from the city council. The city council could authorize the extension upon written recommendation of the zoning administrator, where the owner established discontinuance would result in a taking without just compensation.

On November 12, 1991, the planning commission discussed the amortization provision for the nonconforming adult uses, but voted not to recommend the ordinance. Instead, it referred the issue of amortization in general to the nonconforming use subcommittee. The full city council considered ordinance 1551 on November 18, 1991, and voted to hold a public hearing rather than waiting to discuss an overall revision of the general nonconforming use section of the ordinance. On December 2, 1991, the full city council held the public hearing on ordinance 1551 and then enacted the amortization ordinance for nonconforming adult uses.

In October 1992, the city received notice that ads had been placed in the local newspaper by Compel Corporation to hire nude female dancers for a club to be opened in the city's C–3 commercial zone. Officers of Compel Corporation met with the city attorney and city planner to discuss the nature of the business and applicable ordinances, but denied that nudity would be involved. They were advised by letter that operation of an adult cabaret in the proposed location was prohibited by ordinance.

On November 17, 1992, Compel Club opened as a nonalcoholic nightclub and featured nude female dancers. Early in the morning of November 19, the police raided the establishment, and arrested the officers of the corporation and dancers for indecent exposure. Later that day, the city commenced a civil action against Compel seeking to enjoin its continuance as an adult use pursuant to ordinance 1545. Ultimately, all criminal charges were dismissed pursuant to settlement of the lawsuit. While the club attempted to continue its business through offering "bikini dancing" and "nude limousine rides," it ultimately closed for financial reasons.

On January 12, 1993, planning director Gartland addressed the planning commission about the preparation of a purpose statement clearly identifying the reason for adopting the adult use ordinance. On February 18, 1993, she wrote a memo to the city council proposing an amendment to ordinance 1545 providing an explicit purpose and intent statement, and a public hearing was held on March 15. During the hearing, there was extensive testimony and discussion. The city council adopted ordinance 1596 adding a purpose and intent statement to ordinance 1545.

On February 1, 1994, appellants brought a declaratory judgment action asking the district court to declare, in relevant part, ordinances 1545 (adult use) and 1551 (amortization) unconstitutional and in violation of Minn.Stat. § 462.357 (1990). They sought an injunction to prevent enforcement of the amortization ordinance against the adult bookstore, and requested damages for Compel. The matter was tried before a jury, which answered special verdict questions with the court deciding the remaining issues.

One major area of dispute at trial was whether alternative locations for an adult business were available in areas consistent with the provisions of the ordinance. The parties provided exhibits including maps and

descriptions and extensive testimony. Appellants' expert, R. Bruce McLaughlin, prepared a study and testified extensively as to the actual availability of sites for adult uses under the ordinance. He considered whether the sites were truly part of the real estate market, were accessible to the general public, had an adequate infrastructure, and suited some generic enterprise. In his report, he concluded that of fifteen proposed sites, two were available, comprising .87% of available land, and one of these two was marginal for any commercial use.

The city offered witnesses who testified as to available alternative sites, including realtor John Shardlow, the city's planning expert, and city planner Gartland. Shardlow concluded McLaughlin was in error and that numerous sites were available. He reviewed them in his study as well as testifying. Gartland also testified as to the availability of particular sites.

Another area of major dispute was whether the city had offered sufficient proof as to secondary effects from adult uses. Appellants contended there was insufficient information in the recommendations of the city planner and minutes of the city council showing a discussion of and reliance on studies of adverse secondary effects, particularly high risk activities. Appellants offered a study and testimony by their expert McLaughlin that no adverse secondary effects, such as increase in criminal activity or decrease in property values, have occurred near the adult bookstore.

The city cited evidence as to information received during enactment of ordinance 1535 (high risk sexual conduct), adult use studies conducted by other jurisdictions, other ordinances that have been judicially approved, foreign case law, public testimony, complaints and personal experience of citizens, and other information from the city attorney and planning commission. The city's expert, Shardlow, disagreed with McLaughlin's conclusions, testifying that adverse secondary effects of adult uses in general have been "irrefutably established," as well as the "significant" and "well documented" secondary effects from the adult bookstore in question

here, which the city council had knowledge of when the ordinance was passed.

Finally, testimony was taken as to the damages from loss of future income Compel allegedly suffered when it was unable to offer nude dancing. Testimony was taken from the owner of a similar establishment 10 miles away, as well as from a professor who projected Compel's future income.

The jury returned a special verdict, finding Compel Corporation had suffered no damages and that 15 relevant sites were available on November 19, 1992, and 17 were available on January 31, 1994. The trial court upheld the constitutionality of the ordinances, and ruled the city council complied with Minn. Stat. § 462.357. Appellants moved for amended findings and, in the alternative, for a new trial. The trial court amended the basis for its conclusions of law in part and denied the motion for a new trial.

DI MA, Malcolm, and Compel appeal from the trial court order denying a new trial and from the judgment. We affirm in part and reverse in part.

### ISSUES

I. Did the enactment of ordinances 1545 and 1551 violate Minn.Stat. § 462.357, subds. 1 and 4 (1990)?

II. Are ordinances 1545 and 1551 unconstitutional?

III. Did the trial court err in denying appellants' motion for a new trial?

### ANALYSIS

#### I.

The issue we first address is whether the city council failed to comply with the requirements of Minn.Stat. § 462.357, subds. 1, 4 (1990), in enacting the zoning and amortization ordinances. This statute governs various procedural aspects of zoning-related ordinances and the requirements for the valid enactment of such ordinances. Construction of a statute presents a question of law. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

■ Minn.Stat. § 462.357, subd. 1, provides in relevant part:

The regulations shall be uniform for each class or kind of buildings, structures, or land and for each class or kind of use throughout such district, but the regulations in one district may differ from those in other districts.

Appellants contend that the enactment of ordinances 1545 and 1551 violates this provision because they are not uniform with respect to the classes of property. They argue that adult use establishments are clearly commercial uses, although they alone are forced into industrial zones under the adult use ordinance. St. Cloud, Minn., Ordinance 1545 (Nov. 4, 1991), Ordinance 1551 (Dec. 2, 1991). Appellants contend there is no evidence showing that secondary effects from adult use establishments, such as property value and crimes, are different than from that of other commercial uses.

Adult use establishments constitutionally may be subject to neutral time, place, and manner regulations that are not applicable to other commercial uses. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 928–29, 89 L.Ed.2d 29 (1986). Thus, they are different from other kinds of commercial uses.

■ Appellants next argue that ordinance 1551, the amortization ordinance for adult use establishments, was enacted in violation of Minn.Stat. § 462.357, subd. 4, which provides as follows:

An amendment to a zoning ordinance may be initiated by the governing body, the planning agency, or by petition of affected property owners as defined in the zoning ordinance. An amendment not initiated by the planning agency shall be referred to the planning agency, if there is one, for study and report and may not be acted upon by the governing body until it has received the recommendation of the planning agency on the proposed amendment or until 60 days have elapsed from the date of reference of the amendment without a report by the planning agency.

This statute applies to not only the adult use ordinances, but also to all zoning ordinances

the body may consider. The doctrine of substantial performance would not meet the standards of this statute.

■ Appellants contend that the record of the enactment of ordinance 1551 plainly establishes failure to comply. On November 4, 1991, the city council referred the amortization provision for the adult use ordinance to the planning commission. On November 12, 1991, the planning commission voted not to approve it and instead voted to refer the issue of amortization in general to the nonconforming use subcommittee. On November 18, the city council voted to hold a public hearing on the amortization ordinance on December 2, rather than considering a comprehensive revision of the general nonconforming use section. On December 2, 1991, the council held a public hearing and enacted the amortization ordinance. Because the planning commission did not make a recommendation and 60 days had not passed, appellants contend the ordinance was invalid.

The city contends that this is largely a semantic argument over the meaning of a "recommendation." It contends the trial court correctly concluded the planning commission complied with the recommendation requirement because it defeated a motion to approve the proposed ordinance, which constitutes a "recommendation" under the statute.

We disagree. The planning commission voted not to recommend approval and voted to refer the matter to the nonconforming use subcommittee to make a recommendation. The council decided not to wait for a recommendation from the nonconforming use subcommittee addressing the general nonconforming use provision of the ordinance, but instead went ahead and passed the amortization provision specific only to the adult use ordinance. As appellants argue, the planning commission saw the need to study the issue further, rather than make a recommendation to the council at that time. The failure to comply with the statutory requirement of a recommendation or passage of 60 days renders the enactment invalid. *See Pilgrim v. City of Winona*, 256 N.W.2d 266, 270 (Minn.1977) (ordinance invalid for failure to comply sufficiently with notice and public

hearing requirements of section 462.357, subdivision 3); *City of Bemidji v. Beighley,* 410 N.W.2d 338, 342 (Minn.App.1987) (statutory procedures of section 462.357, subdivisions 3 and 4, not met where council did not wait for planning commission report or lapse of 60 days before acting on ordinance; ordinance nonetheless saved under Minn.Stat. § 599.13 providing ordinance conclusively valid after publication and passage of three years). Thus, failure to comply rendered ordinance 1551 invalid.[1]

## II.

■ A municipal zoning ordinance is presumed constitutional. *City of St. Paul v. Dalsin,* 245 Minn. 325, 329, 71 N.W.2d 855, 858 (1955). The burden of proving the ordinance is unconstitutional rests on the party attacking its validity. *Id.*

### A. First Amendment

■ When regulations are enacted for the purpose of restraining speech based on content, they constitute a presumptive violation of the First Amendment. *City of Renton,* 475 U.S. at 46–47, 106 S.Ct. at 928. Content-neutral time, place, and manner regulations are constitutional, however, if they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication. *Id.* at 47, 106 S.Ct. at 928. An ordinance that by its terms is designed to address secondary effects of adult uses, such as preventing crime, protecting the city's retail trade, maintaining property values, and preserving the quality of life, rather than suppressing the expression of unpopular views, is a justified content-neutral regulation. *Id.* at 48, 106 S.Ct. at 929. Thus, zoning ordinances that are designed to combat undesirable secondary effects from sexually explicit businesses are reviewed under standards applicable to content-neutral time, place, and manner regulations. *Id.* at 49, 106 S.Ct. at 929–30.

### (1) Substantial Governmental Interest

■ The first issue concerns the showing necessary to prove a substantial governmental interest. *Id.* at 47, 106 S.Ct. at 928. The city need not conduct new studies or produce evidence independent of that already generated by other cities, so long as the evidence on which the city relies is reasonably believed to be relevant to the problem the city wishes to address. *Id.* at 51–52, 106 S.Ct. at 931. Appellants urge this court to adopt a standard requiring objective evidence that the ordinance is necessary to combat adverse secondary effects. However, this court and the eighth circuit have applied the standard in *City of Renton,* which we find is still controlling. *See Holmberg v. City of Ramsey,* 12 F.3d 140, 143 (8th Cir.1993), *cert. denied,* 513 U.S. 810, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994); *City of Ramsey v. Holmberg,* 548 N.W.2d 302, 306 (Minn.App.1996), *review denied* (Minn. Aug. 6, 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 766, 136 L.Ed.2d 713 (1997).

■ The issue as to whether the trial court determination that the substantial government interest in combating adverse secondary effects was shown will be addressed next. Appellants argue that this finding is unsupported by the evidence and assert that instead the ordinance is content-based. Appellants contend that the record does not show the planning commission or city council discussed legitimate governmental purposes or studies of other cities. Appellants cite planning director Gartland's report that referred to the content of the materials offered at the store and its impact on adult uses. Further, appellants claim that the public health concerns are irrelevant to locational zoning because changing the location of the adult bookstore would not change the nature of the alleged health threat.

The trial court found, in its initial judgment, that the predominant concern of the city council when it enacted the adult use ordinance was to address the secondary effects of adult use, particularly the concerns raised in The Chronicle article that prompted

---

1. In light of this decision, we find it unnecessary to address the arguments as to the constitutional-

ity of the ordinance.

the council to act. In its attached memorandum, it more extensively addressed the issue. It noted that even if content may have partially motivated the council, the predominant concern was secondary effects. *See City of Renton,* 475 U.S. at 47–48, 106 S.Ct. at 929 (city council's predominant concern of secondary effects established zoning ordinance unrelated to suppression of free speech). The trial court cited the attorney general's study that council members received in 1989 and 1991, before the ordinance was enacted. It also found the council considered the work of city staff, who had researched relevant cases. Finally, it referred to planning director Gartland who, on October 28, 1991, gave the council research materials, including decisions and reports.

The court rejected appellants' claim that reliance on the studies was unreasonable because they were methodologically flawed and that in fact no adverse secondary effects existed. The court held that the precision of the studies need not be proven, that the city council reasonably relied on the experience of other cities, and that secondary effects did exist, including high risk sexual conduct, "cruising," and health code violations.

Appellants' argument would require this court to reverse the trial court's findings of fact, which cannot be done unless they are clearly erroneous. *See* Minn.R.Civ.P. 52.01. The trial court decision that the council relied upon studies and case law from other states is supported by the record and is not clearly erroneous. Further, this is exactly the type of evidence on which it properly may rely. *See City of Renton,* 475 U.S. at 51–52, 106 S.Ct. at 931; *Holmberg,* 12 F.3d at 143; *City of Ramsey,* 548 N.W.2d at 306. The city council's predominant concern was as to secondary effects generated by adult use establishments.

■ We next address appellants' constitutional challenge to the ordinance based on their claim that they established the secondary effects that originally justified the ordinance no longer exist. *See United States v. Carolene Prods. Co.,* 304 U.S. 144, 153–54, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938) (challenges to statute); *New Jersey Citizen Action v. Edison Township,* 797 F.2d 1250,

1257–58 (3rd Cir.1986) (challenges to ordinances), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 186 (1987).

Appellants rely on the report and testimony by its expert witness McLaughlin, who concluded that there was no evidence of any adverse secondary effects as shown by an increase in criminal activity or decline in property values related to the adult bookstore. They further argue that unlawful sexual activities would constitute the same health hazard regardless of where the store is located.

The trial court in its posttrial order concluded that *Carolene* was inapplicable because appellants had not shown the adverse secondary effects of adult use ceased to exist. The trial court had evidence in the record on which to base its decision, and it is not clearly erroneous.

*(2) Alternative Channels of Communication*

■ A content-neutral ordinance regulating adult entertainment uses must allow for reasonable alternative avenues of communication. *City of Renton,* 475 U.S. at 47, 106 S.Ct. at 928. In deciding the issue, the court will look at the amount of other land open to use for the adult sites. *Id.* at 53, 106 S.Ct. at 932. Appellants contend they have established that this showing of reasonable alternative avenues of communication was not made because they proved there was insufficient other property available for them to locate adult use establishments.

■ The First Amendment requires only that the city refrain from effectively denying appellants a "reasonable opportunity" to open and operate adult entertainment businesses within the city. *Id.* at 54, 106 S.Ct. at 932. The fact that the "available" land may range from raw land to developed land, and that there was allegedly no "commercially viable" adult bookstore space, will not render an ordinance unconstitutional. *Id.* at 53–54, 106 S.Ct. at 932.

■ A city cannot ban adult uses totally or fail to provide reasonable sites for relocation that are sufficient for uses existing with-

in its borders at the time of the enactment, thereby forcing some businesses to close. *Alexander v. City of Minneapolis*, 928 F.2d 278, 283–84 (8th Cir.1991). If the ordinance provides potential relocation sites in accessible zoned areas in the community, such ordinances do not unreasonably limit alternative avenues of communication. *Holmberg*, 12 F.3d at 144 (availability of 35% of city's land, both developed and undeveloped, zoned for commercial uses provides reasonable opportunity, despite claim relocation costs would put owner out of business).

■ The jury found by special verdict that 15 sites were available on November 19, 1992, and 17 sites were available on January 31, 1994. The special verdict will be set aside only when it is "perverse and palpably contrary to the evidence" and will not be disturbed if supported by any theory. *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn.1984).

■ Appellants contend that the jury's finding is not supported by the evidence and argue that some of the sites were unavailable as a matter of law. Even the remaining sites, appellants argue, are not reasonably part of the commercial market because they are industrial in character, do not have the necessary infrastructure, and are in close proximity to major generators of toxic waste, requiring environmental assessments.

The trial court noted that the evidence on this issue presented by both sides was disappointingly confusing and fragmented, and that jury instructions were not helpful. The court, which attempted to duplicate the efforts the jury would have had to have made to examine the sites individually, discovered various flaws in the map. Finally, the court concluded that many of the fact questions presented to the jury to determine whether a particular site was available were more properly viewed as legal questions. Because it was appellants' choice to turn the task into a credibility contest as a matter of trial strategy, appellants could not now complain about it. We agree with the trial court that under these facts, the jury verdict was not "perverse and palpably contrary to the evidence."

## B. Unconstitutionally Overbroad Ordinances

Appellants claim that even if the adult bookstore produced adverse secondary effects, there is no showing that the ordinance advanced the city's interest in alleviating those effects. Instead, they argue the ordinance is overbroad and not narrowly tailored to combat adverse secondary effects.

■ An ordinance regulating adult use must be "narrowly tailored" to affect only the category of uses producing the unwanted secondary effects. *City of Renton*, 475 U.S. at 52, 106 S.Ct. at 931. A law will be invalidated based on First Amendment overbreadth claims only when the overbreadth involved is substantial. *New York v. Ferber*, 458 U.S. 747, 769, 102 S.Ct. 3348, 3361, 73 L.Ed.2d 1113 (1982).

■ Appellants assert that the only secondary effects for which there is any evidence relate to the unlawful sexual activity in the adult bookstores, liaisons planned at the bookstore, or cruising in the immediate area. They contend no evidence shows these effects would be alleviated by implementation of the zoning ordinance. Further, because the police chief testified that his department does not begin patrolling the industrial zones until after 3:00 a.m., appellants claim that if adult uses were located in that area there would be no police presence until that time. Appellants dispute the trial court's ruling that adult entertainment uses receive lesser First Amendment protections.

■ The purpose of the adult use ordinances is to combat unwanted secondary effects. *City of Renton*, 475 U.S. at 49, 106 S.Ct. at 929–30. We agree with the trial court that the adult use ordinance here is tailored to apply to only the class of adult uses that would produce the unwanted secondary effects and thus is not overbroad. *See id.* at 52, 106 S.Ct. at 931 (requiring ordinance to be narrowly tailored to affect category shown to produce unwanted secondary effects). As this court stated, adult speech receives limited First Amendment protection. *State v. Holmberg*, 545 N.W.2d 65, 70 (Minn.App.1996), *review denied* (Minn. May 21, 1996).

## C. Constitutionality of Ordinance as Applied to Compel Corporation

■ Appellant Compel challenges the constitutionality of ordinance 1545 as applied to its club, which provided nude female dancers and was located in a C–3 commercial district. The ordinance applies to an "adult cabaret" offering live performances characterized by "exposure of specified anatomical areas" and may be located only in I–1 and I–2 zones. Thus, the club, an adult cabaret under the statute, opened in a location that put it in violation of the ordinance.

Compel, however, argues that even if the city council could conclude the adult bookstore produced an adverse secondary effect on a public health basis, there was no basis to conclude an adult cabaret featuring nude female dancers could yield the same results. It contends that the ordinance is overbroad. An adult cabaret is an adult use. *See City of St. Paul v. Carlone,* 419 N.W.2d 129, 131 (Minn.App.1988). As discussed above, the city council relied on the appropriate type of information to address the adverse secondary effects from adult use entertainment.

Compel also notes that total bans on nude dancing have been repeatedly invalidated. Ordinance 1545 does not prohibit nudity but instead places reasonable locational restrictions on an adult cabaret. Pursuant to the discussion above, the ordinance as applied to Compel is constitutional.

## III.

The final issue is whether appellants' motion for a new trial should be granted. The trial court's decision to grant or deny a new trial will not be disturbed absent a clear abuse of discretion. *Halla Nursery, Inc. v. Baumann–Furrie & Co.,* 454 N.W.2d 905, 910 (Minn.1990).

■ Appellants first argue the trial court was clearly erroneous in excluding evidence as to the demand for adult entertainment within St. Cloud in order to determine whether the market in adult entertainment was "essentially unrestrained." They contend that for the adult use ordinance to pass constitutional muster, the market in sexually explicit materials must remain "essentially unrestrained." *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976) (plurality opinion).

The city contends appellants have not established the trial court abused its discretion in denying the evidence or demonstrated prejudicial error. *See Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990) (error in admission or exclusion of evidence does not entitle party to new trial unless error is prejudicial). As the trial court noted, the First Amendment only requires that the city "refrain from effectively denying [adult use owners] a reasonable opportunity to open and operate" an adult use establishment within the city. *City of Renton,* 475 U.S. at 54, 106 S.Ct. at 932.

■ Appellants also assert that admitting evidence as to the sanitary conditions in the adult bookstore was absolutely irrelevant and clearly prejudicial, and requires the granting of a new trial. The health code violations were proper adverse secondary effects for the city to consider, and therefore such facts were relevant.

■ Appellants next contend that the party seeking to restrain speech has the burden of proving entitlement to do so. *See State by Humphrey v. Casino Mktg. Group, Inc.,* 491 N.W.2d 882, 885–86 (Minn.1992) (where state sought to restrain commercial speech, state bore burden of establishing statute's constitutionality), *cert. denied,* 507 U.S. 1006, 113 S.Ct. 1648, 123 L.Ed.2d 269 (1993); *see also Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963) (any system of prior restraints of expression bears heavy presumption against constitutional validity). They contend such an instruction should have been given in this case. This court, however, has placed the burden of proof on the adult use owner to establish that the ordinance is not a content-neutral time, place, and manner regulation. *See Holmberg,* 545 N.W.2d at 70 (municipal ordinances presumed constitutional and party attacking validity bears burden of proving them unconstitutional).

■ Compel contends that the jury verdict and trial court determination that it

**324**

suffered no damages were unsupported by the evidence. Compel sought damages for wrongfully being put out of business because it could not offer nude dancing under the ordinance. It contends it showed there was a ready market in St. Cloud for the business, the club successfully began operating within a matter of weeks, and it was significantly successful during the only two days of operation. It provided evidence of profits from a comparable business and expert testimony. It contends the trial court erred under *Cardinal Consulting Co. v. Circo Resorts, Inc.*, 297 N.W.2d 260, 268 (Minn.1980) (sufficient evidence for jury to find damages for loss of profits for new business based on evidence of profitability of similar businesses).

First, the fact that the ordinance under which Compel Club was temporarily closed down is constitutional would seem to remove the basis for Compel's claim for damages. In any event, the jury and court were presented with extensive testimony by Compel's expert witness as to the estimated future income stream. The jury awarded no damages. The trial court did not find the expert credible, and instead determined that his opinion as to damages was based on multiple speculative or clearly unreliable assumptions. We will not disturb the jury finding that Compel suffered no damages and the trial court's rejection of Compel's claim that it proved damages.

### DECISION

Ordinance 1551, addressing the amortization of the adult use ordinance, is vacated, as enacted without statutory authority. We uphold the constitutionality of ordinance 1545, the adult use ordinance, and affirm the trial court's denial of the motion for a new trial.

**Affirmed in part and reversed in part.**