**CITY OF CRYSTAL, Appellant,**

v.

**FANTASY HOUSE, INC., d/b/a Fantasy Gifts, et al., Respondents.**

No. C3–97–96.

Court of Appeals of Minnesota.

Sept. 30, 1997.

Review Denied Nov. 18, 1997.

226

James J. Thomson, Daniel J. Greensweig, Kennedy & Graven, Chartered, Minneapolis, George C. Hoff, Hoff, Barry & Kuderer, P.A., Eden Prairie, for appellant.

David Gronbeck, Law Offices of David Gronbeck, Minneapolis, for respondents.

Carla J. Heyl, St. Paul, for amicus curiae League of Minnesota Cities.

Randall D.B. Tigue, Minneapolis, for amicus curiae Minnesota Civil Liberties Union.

Considered and decided by HUSPENI, P.J., and KALITOWSKI and THOREEN,[†] JJ.

## OPINION

HUSPENI, Judge.

Respondent Fantasy House, Inc. opened an adult novelty business in appellant City of Crystal in violation of Crystal's interim ordinance that bans adult establishments. Crystal brought a motion for declaratory judgment claiming that Fantasy House violated the ordinance and seeking to enjoin Fantasy House from operating its business in Crystal. Fantasy House, in turn, alleged that both Ordinance No. 95–11 (interim ordinance) and the later-adopted Ordinance No. 96–2 (permanent ordinance) were unconstitutional restrictions of free speech.

After a trial, the court found that the interim ordinance banned adult establishments and that the permanent ordinance provided less than one percent of Crystal's land for their location. As a result, the court held that the interim and permanent ordinances failed to provide reasonable alternative avenues of communication and were not narrow-

ly tailored to a substantial government interest. Also, the court held that it was not reasonable for Crystal to rely on studies of adult establishments providing on-site consumption of sexually explicit material because Fantasy House does not provide on-site consumption.

Because we conclude that (1) municipalities may rely on studies of the negative secondary effects of adult establishments to draft a restrictive ordinance if the municipalities reasonably believe that the businesses studied are similar to those targeted by the ordinance and (2) the two ordinances in question provided reasonable alternative avenues of communication, we reverse.

## FACTS

In June 1995, unaware that any adult establishment was planning to open, appellant City of Crystal adopted Ordinance No. 95–11 (interim ordinance), which prohibited any adult establishment from locating within 1,000 feet of residential areas, daycare centers, libraries, parks, religious institutions, playgrounds, or other public recreational areas. Because no area within Crystal was not within 1,000 feet of such places, adult establishments were effectively banned from the city.

On December 1, 1995, respondent opened Fantasy House Gifts selling t-shirts, greeting cards, lingerie, a limited number of adult videos and books, and various sexual novelty items. The store was located in Crystal's B–4 district and was within 1,000 feet of a park and of a residential area. Crystal moved for a declaratory judgment that Fantasy House violated the interim ordinance and for an injunction prohibiting Fantasy House from operating its business in Crystal.

On January 16, 1996, Crystal adopted Ordinance No. 96–2 (permanent ordinance), replacing the interim ordinance. The permanent ordinance restricts any business devoting 25% or more of its floor area to merchandise depicting specified sexual activities or specified anatomical areas to industrial areas not within 250 feet of any

[†] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 10.

residential boundary, church, school, daycare, park, or specified business and not within 500 feet of any other adult use. In February 1996, the city supplemented its original declaratory judgment complaint to include a claim that Fantasy House was in violation of the permanent ordinance.

A bench trial was held on Crystal's request for a declaratory judgment and Fantasy House's challenge to the constitutionality of both the interim and permanent ordinances. Testimony at trial showed that the permanent ordinance permitted the location of adult establishments on 34 acres of land in Crystal.[1] The trial court found that Fantasy House was entitled to First Amendment protection and that the ordinances were an unconstitutional restriction of free speech because they were not narrowly tailored and did not provide reasonable alternative avenues of communication.

## ISSUE

Are the interim and permanent ordinances unconstitutional restrictions of free speech?

## ANALYSIS

 A municipal ordinance is presumed constitutional. The burden of proving that an ordinance is unreasonable or that the requisite public interest is not involved, and consequently that the ordinance does not come within the police power of the city, rests on the party attacking its validity. *City of St. Paul v. Dalsin,* 245 Minn. 325, 329, 71 N.W.2d 855, 858 (1955).

Before addressing the constitutionality of the challenged ordinances, we must answer the preliminary question of whether First Amendment protections are at all implicated in this case. The trial court believed they were because "[p]art of [Fantasy House's] inventory consists of materials such as adult videos, greeting cards with sexually explicit messages, and T-shirts * * *." Crystal argues that Fantasy House is not entitled to First Amendment protections because its operations have only an incidental relationship to speech-related activities.[2]

We recognize that without First Amendment protection, Fantasy House would face an insurmountable task in challenging these municipal ordinances. *See Wedemeyer v. City of Minneapolis,* 540 N.W.2d 539, 543 (Minn.App.1995) (municipal ordinances are valid, absent proof that they are clearly discriminatory and lack any relation to public health, safety, or general welfare); *Chase v. City of Minneapolis,* 401 N.W.2d 408, 412 (Minn.App.1987) (standard of review for zoning decisions is whether the action was reasonable and not arbitrary and capricious). Therefore, because we deem it important to reach the substantive issues presented by this case, and because consideration of the substantive issues results in a conclusion that the ordinances are constitutional even when tested under First Amendment principles, we shall assume, without so holding, that Fantasy House is indeed entitled to First Amendment protection.

### Constitutionality of the Interim Ordinance

Crystal concedes that the interim ordinance provided no place in Crystal for an adult business to locate, but argues that Minn.Stat. § 462.355, subd. 4 (1996), gives it broad powers to create such an ordinance. We agree.

Minn.Stat. § 462.355, subd. 4, reads in relevant part:

> If a municipality is conducting studies or has authorized a study to be conducted or has held or has scheduled a hearing for the purpose of considering adoption * * * of [an ordinance] * * * the governing body of the municipality may adopt an interim or-

1. It should be noted that, although the trial court focused its analysis on the fact that the available land was .9% of the 3,768 total acres in Crystal, this available land also represents 15% of Crystal's 233 acres of industrial and commercial zones.

2. Crystal claims that only approximately 2% of Fantasy House's materials are of the type qualify-

ing for First Amendment protection. Fantasy House notes that Crystal cites to nothing in the record that supports this assertion. We shall not enter the thicket presented by the question of whether First Amendment protections apply only when a certain percent of materials sold by an establishment are of the type qualifying for that protection.

dinance applicable to all or part of its jurisdiction for the purpose of protecting the planning process and the health, safety and welfare of its citizens. The interim ordinance may regulate, restrict or prohibit any use * * * within the jurisdiction * * * for a period not to exceed one year from the date it is effective * * *.

The record indicates that Crystal complied with these requirements. The interim ordinance mandated that city officials study the "effect of [adult] uses on other uses in the surrounding area" and present the results to the Planning Commission and City Council.

■ A moratorium may be enacted for a limited duration if appropriate studies are conducted and zoning ordinances are expeditiously adopted. *Wedemeyer*, 540 N.W.2d at 542. Here, a permanent ordinance was adopted approximately seven months after enactment of the interim ordinance. This was expeditious as a matter of law.

■ We are aware, also, that a city may not enact an interim ordinance in an arbitrary manner to limit a certain project. *Medical Services, Inc. v. City of Savage*, 487 N.W.2d 263, 267 (Minn.App.1992). There is no possibility that the interim ordinance at issue here was enacted to limit a certain project. The interim ordinance was enacted at least three months before Crystal became aware that Fantasy House was planning to open for business in Crystal.

■ Fantasy House claims that *Wedemeyer* and *Medical Services* are an apparent contradiction to other holdings of this court. *DI MA Corp. v. City of St. Cloud*, 562 N.W.2d 312, 321–22 (Minn.App.1997) ("A city cannot ban adult uses totally or fail to provide reasonable sites for relocation * * *") (quoting *Alexander v. City of Minneapolis*, 928 F.2d 278, 283–84 (8th Cir.1991)), *review denied* (Minn. July 28, 1997). The distinction, however, is simple: while a city can rarely ban a particular use with a permanent zoning ordinance, Minnesota law created interim zoning ordinances for just such a moratorium. *See* Minn.Stat. § 462.355, subd. 4.

### Constitutionality of the Permanent Ordinance

■ We turn now to United States Supreme Court case law that describes the standards an ordinance must meet to comply with the constitutional requirements for restricting adult establishments. Content-neutral time, place, and manner regulations are constitutional if they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986). Whether the permanent ordinance is a valid content-neutral, time, place, and manner regulation was not addressed by the trial court and was not raised as an issue in this appeal. Therefore, we focus our analysis on whether the permanent ordinance does serve a substantial government interest and does not unreasonably limit alternative avenues of communication.

### A. Narrowly tailored to serve a substantial government interest.

Courts have consistently held that preventing the negative secondary effects associated with adult establishments is a substantial government interest unrelated to the suppression of free expression. *See City of Renton*, 475 U.S. at 50–51, 106 S.Ct. at 930–31; *ILQ Investments, Inc. v. City of Rochester*, 25 F.3d 1413, 1416 (8th Cir.1994).

■ For Crystal to prove that its permanent ordinance is narrowly tailored to the government interest, it must prove that adult establishments cause negative secondary effects. In doing so,

[t]he First Amendment does not require a city * * * to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is *reasonably believed* to be relevant to the problem that the city addresses.

*City of Renton*, 475 U.S. at 51–52, 106 S.Ct. at 931 (emphasis added).

In this case, Crystal relied on studies of businesses that allow on-site consumption of sexually explicit material to prove that all adult establishments cause negative second-

ary effects.[3] The trial court agreed with Fantasy House's position that the difference between businesses that provide on-site consumption of sexually explicit material and those that do not is so significant that the studies of businesses providing on-site consumption could not reasonably be relied upon to restrict businesses that do not provide on-site consumption. Because it rejected the city's reliance on these studies, the trial court held that the permanent ordinance[4] was not narrowly tailored to a substantial government interest and was unconstitutional.

While we do not dispute that distinctions may, indeed, be drawn between on-site and off-site consumption in regulating adult establishments, we conclude that case law does not support the trial court's conclusion. The distinction between businesses that provide on-site consumption and those that do not has been considered by this court and rejected as "simply not the law." *City of Ramsey v. Holmberg,* 548 N.W.2d 302, 306 (Minn.App.1996), *review denied* (Minn. Aug. 6, 1996). A city need only prove that the ordinance targets businesses "reasonably believed to produce at least some of the unwanted secondary effects * * *." *Id.* (quoting *ILQ Investments,* 25 F.3d at 1418).[5]

We believe that the test established by the Supreme Court in *City of Renton* requires us to answer the following question: Did Crystal *reasonably believe* that the studies relied

upon were relevant to restricting adult establishments? We conclude that the testimony and evidence in this case demonstrate that Crystal's belief was reasonable. Therefore, the permanent ordinance is narrowly tailored to meet the government's interest.

## B. Reasonable alternative avenues of communication.

Under *City of Renton,* when a municipal ordinance restricts free speech in order to control the negative effects of adult establishments, it must provide reasonable alternative avenues of communication. *Id.* at 50, 106 S.Ct. at 930. The First Amendment requires only that a city not deny adult establishments a reasonable opportunity to locate a business within the city. *Id.* at 54, 106 S.Ct. at 932. Each business must fend for itself in the real estate market and cope with the same problems that all prospective purchasers face. *Id.* Providing 15 possible locations has been found sufficient to meet the requirement of reasonableness. *DI MA Corp.,* 562 N.W.2d at 322 (relying on *Alexander v. City of Minneapolis,* 928 F.2d at 283–84) (holding that providing 6.6% of city's commercial land is sufficient).

In this case, the area provided by the permanent ordinance is .9% of the land in Crystal and 15% of the city's industrial and commercial zones; the trial court found this

---

3. Examples of adult establishments that provide on-site consumption of sexually explicit material include massage parlors, nude dance clubs, adult movie theaters, and adult establishments that provide booths for privately viewing adult movies. Fantasy House provides no on-site consumption of sexually explicit material.

4. The trial court's holding actually encompassed both the interim and permanent ordinances. In view of our earlier analysis of the constitutionality of the interim ordinance, we limit our consideration of the trial court's determination on this issue to the permanent ordinance only.

5. We note the strong dissent in *City of Ramsey* and other case law that would characterize this distinction as fundamental. *See, e.g., Z.J. Gifts v. City of Aurora,* 932 F.Supp. 1256, 1258 (D.Colo. 1996) (calling analysis in *ILQ* flawed for considering the subjective intent of the city instead of the objective effects on the freedom to communicate). Further, in its amicus brief, Minnesota Civil Liberties Union (MCLU) cites *44 Liquormart v. Rhode Island,* —— U.S. ——, 116 S.Ct. 1495,

134 L.Ed.2d 711 (1996) to argue that the ordinances upheld in *ILQ* and *City of Ramsey* would no longer be upheld. *44 Liquormart* holds that a state legislature does not have broad discretion to suppress truthful, non-misleading advertising to further a state goal when non-speech-related alternatives are available. —— U.S. at ——, 116 S.Ct. at 1511. A concurrence states that courts must carefully examine statutes that restrict speech allegedly to further a state goal. —— U.S. at ——, 116 S.Ct. at 1522, O'Connor, J., concurring.

However, *ILQ* and *City of Ramsey* did not base their upholding of ordinances on any perceived discretion to suppress truthful, non-misleading speech. Instead, these courts based their holdings on the conclusion that the distinction between businesses that provide on-site consumption and businesses that do not is irrelevant. Such independent judicial determinations demonstrate that *ILQ* and *City of Ramsey* gave their respective ordinances sufficiently strict scrutiny.

area to be insufficient.[6] Again, we find that case law does not support the trial court's conclusions. The area available to Fantasy House is more than double the percentage found to be reasonable in *Alexander*. In addition, we agree with Crystal's representation that the limited area available in its city is a result of the city's overwhelmingly residential character and conservative planning practices.[7]

As a result, any difficulty that Fantasy House has in locating in Crystal stems from difficulties faced by all prospective real estate purchasers. The permanent ordinance provides reasonable alternative avenues of communication and is constitutional.

## DECISION

The interim ordinance met the requirements of Minn.Stat. § 462.355, subd. 4 (1996). In enacting its permanent ordinance, Crystal reasonably relied on studies that analyzed the negative secondary effects associated with adult establishment businesses to establish that the permanent ordinance served a substantial government interest. The permanent ordinance also provided reasonable alternative avenues of communication. As a result, the interim and permanent ordinances are constitutional.

**Reversed.**

---

**6.** Fantasy House asserts that zoning to put commercial uses in the industrial section of town is illegal because it conflicts with Crystal's comprehensive plan. Minn.Stat. § 473.865, subd. 2 (1996) ("A local governmental unit shall not adopt any official control * * * in conflict with its comprehensive plan * * *"). However, a discrepancy between the zoning ordinance and the comprehensive plan does not affect the presumption of validity of the ordinance; it is just evidence that the ordinance may have been arbitrary. *R.A. Putnam & Associates, Inc. v. City of Mendota Heights, Dakota County,* 510 N.W.2d 264, 268 (Minn.App.1994), *review denied* (Minn. Mar. 15, 1994).

**7.** Testimony indicates that only 6% of Crystal is zoned for commercial or industrial uses.